**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

BENNIE AUSTIN MACK, JR.,      )
            )
        **Plaintiff,**      )
**v.**            )      **Civil Action No. 5:15-03589**
            )
**CHARLES TURNER,** *et al.,*      )
            )
        **Defendants.**      )

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 18), filed on June 9, 2015; (2) Plaintiff's Motion for Default Judgment (Document No. 24), filed on June 18, 2015; and (3) Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 25), filed on June 19, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 22.) Plaintiff filed his Response in Opposition on July 8, 2015. (Document No. 27.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted and Plaintiff's Motions should be denied.

**FACTUAL AND PROCEDURAL HISTORY**

On March 25, 2015, Plaintiff, acting *pro se* and an inmate at FPC Beckley, filed his Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil

rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 1.) Plaintiff names the following as Defendants: (1) Officer Charles Turner; (2) Travis Elmore; (3) Charles E. Samuels, Jr.; (4) Joel Coakley; (5) David LeMaster; and (6) E. Stock. (<u>Id.</u>) Plaintiff alleges that on November 6, 2014, Defendant Charles Turner, "an off duty BOP employee who is not assigned to the Federal Prison Camp, approached the Plaintiff (the only black person in the lobby) and ordered him to go outside in the rain to his personal vehicle and 'close the lid on his black bitch.'"[2] (Document No. 1, p. 3.) Plaintiff states that he "looked at Defendant Charles Turner and

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]   In his Declaration, Defendant Turner states as follows (Document No. 18-2):

6.   On November 6, 2014, I brought my highly trained black German Shepherd to give a demonstration on dog obedience to the inmates in the dog program. My dog is SVV1 titled dog, a certification obtained in the Czech Republic for extensive police style training. She is worth approximately $10,000.

7.   It was raining very heavily when I arrived at the SPC. When I entered the SPC, I realized that I had forgotten to close the side vents on the dog kennel located in the bed of my personal truck.

8.   Mr. Elmore was working as the Camp One Officer at that time. As I entered the SPC Message Center, I told Office Elmore, in a joking manner, to go out there and close the lid on my "Black Bitch."

9.   I said this as a joke to Mr. Elmore because it was raining so hard and I knew Mr. Elmore would not do it. I am not sure if Mr. Elmore even heard me say that.

10.   I made the reference to my dog as a "Black Bitch" because she is a black female German Shepherd, and it is common language for dog trainers to refer to female dogs as "bitches" when they about them.

11.   I did not say that to be offensive to anyone, and I certainly was not

just walked out of the message center." (Id., p. 4.) Plaintiff alleges that once he had returned to the housing unit, he became concerned that Defendant Turner was giving him a direct order. (Id.) Plaintiff states that he and his co-worker Ricky Smith, returned to the message center to inquire whether Defendant Turner was giving him a direct order. (Id.) Plaintiff claims that "Defendant Turner stated that he was giving me a direct order, but then changed his mind and stated that he was kidding." (Id.) Plaintiff contends that Defendant Turner then became verbally abusive and instructed Plaintiff to "turn around so that he could search him and give a real reason to write him up." (Id.) Plaintiff alleges that "under the guise of a pat search, [Defendant Turner] began hitting Plaintiff on his arms and the back of his neck, he continued to strike Plaintiff on his legs and then viciously struck Plaintiff in his groin area twice, causing the Plaintiff severe pain and discomfort." (Id.) Plaintiff claims that when he "winced in pain Defendant Turner screamed in his ear 'shut the f**k up." (Id., p. 5.) Plaintiff asserts that "[a]fter the pat search . . ., Defendant Turner turned his rage on inmate Ricky Smith and called him 'a f**king coward and a spineless bastard' for being there as a witness." (Id.) Plaintiff claims that Defendant Turner continued to be verbally abusive and instructed him and Inmate Smith to "get the f**k out of his sight before he f**ked us up." (Id.) Plaintiff alleges that he and Inmate Smith only responded by obeying Defendant Turner's orders. (Id.) Plaintiff complains that Defendant Travis Elmore was present and merely laughed "as Defendant Charles Turner physically and verbally assaulted the Plaintiff." (Id.) Plaintiff further claims that Defendant E. Stock was present for a portion of the assault, but took no action. (Id.)

---

talking to Plaintiff when I made the statement. Additionally, I would never have an inmate go to my personal vehicle and have any unsupervised contact with my extremely valuable dog.

Plaintiff claims that approximately 20 minutes after leaving the message center, Defendant Elmore instructed all camp orderlies to report to the message center. (Id.) Plaintiff asserts that Defendant Elmore asked all the inmate orderlies their names and then ordered them to return to their housing unit with the exception of Inmate Smith. (Id., p. 6.) Plaintiff alleges that Defendant Turner and Elmore proceeded to assault Inmate Smith "and attempted to intimidate and coerce him into saying that Defendant Turner didn't make any derogatory statements to the Plaintiff." (Id.) Plaintiff contends that Defendant Stock was again present, but did nothing to stop the intimidation or assault. (Id.) As a result of the foregoing, Plaintiff alleges that he "suffered pain and injuries, including soreness and bruising to his groin, arms, and legs, and has experienced anxiety attacks, an inability to sleep through the night, elevated blood pressure, loss of appetite, nightmares, and feelings of anger." (Id., pp. 6 - 7.) Plaintiff requests monetary and declaratory relief. (Id., pp. 8 - 9.)

Plaintiff paid the $400.00 filing and administration fee on April 6, 2015. (Document No. 5.) On April 8, 2015, United States Magistrate Judge R. Clarke VanDervort directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the Defendants as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure. (Document No. 6.)

On June 9, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 18 and 19.) First, Defendants argue that Plaintiff's FTCA claim should be dismissed because: (1) "The United States is the only proper party in an FTCA claim" (Document No. 19, pp. 8 - 9.); and (2) "Plaintiff failed to exhaust his FTCA claim" (Id., pp. 9 - 10.). Next, Defendants argue that

Plaintiff's <u>Bivens</u> claims should be dismissed because: (1) "Plaintiff failed to exhaust administrative remedies on all of his allegations" (<u>Id.</u>, pp. 11 - 12.); (2) "The Defendants cannot be sued in their official capacities" (<u>Id.</u>, pp. 12 - 13.); (3) "Verbal harassment and/or threats do not rise to the level of a constitutional violation (<u>Id.</u>, pp. 13 - 14.); (4) The Court lacks personal jurisdiction over Defendant Samuels (<u>Id.</u>, pp. 14 - 15.); (5) "The evidence refutes Plaintiff's allegations of being struck" (<u>Id.</u>, pp. 15 - 17.); (6) "Defendants Elmore and Stock were not required to intervene in a pat search" (<u>Id.</u>, p. 18.); (7) "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury" (<u>Id.</u>, pp. 18 - 19.); (8) Plaintiff's claim of excessive force should be dismissed (<u>Id.</u>, pp. 19 - 22.); and (9) Defendants are entitled to qualified immunity (<u>Id.</u>, pp. 22 - 24.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 18-1, pp. 2 - 3.); (2) A copy of Plaintiff pertinent medical records (<u>Id.</u>, pp. 5 - 6.); (3) A copy of Administrative Remedy Number 802274 (<u>Id.</u>, pp. 8 - 15.); (4) A copy of Plaintiff's "Chronological Disciplinary Record" (<u>Id.</u>, p. 17.); (5) The Declaration of Charles Turner (Document No. 18-2.); (5) The Declaration of Erica Stock (Document No. 18-3.); (6) The Declaration of Travis Elmore (Document No. 18-4.); (7) The Declaration of Derek Smith (Document No. 18-5, p. 2.); (8) A copy of a letters addressed to Warden Coakley from Plaintiff and Inmate Smith dated November 6, 2014 (<u>Id.</u>, pp. 4 - 9, 15 - 20.); (9) A copy of Plaintiff's SIS Affidavit (<u>Id.</u>, pp. 11 - 13.); and (10) A copy of the Affidavit of Inmate Smith (<u>Id.</u>, pp. 22 - 25.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 11, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 22.)

On June 18, 2015, Plaintiff filed his Motion for Default Judgment. (Document No. 24.) Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction on June 19, 2015. (Document No. 25.) On July 8, 2015, Plaintiff filed his Response in Opposition to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 27.) As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's Declaration dated June 17, 2015 (Document No. 27-1, pp. 2 - 7.); (2) A copy the "Sworn Affidavit of Ricky Ray Smith" dated January 12, 2015 (Id., pp. 9 - 13.); (3) A copy of the Declaration of Inmate John Harlow dated July 3, 2015 (Id., pp. 15 - 16.); (4) A copy of the Declaration of Inmate Brian Scott Martin dated June 25, 2015 (Id., pp. 18 - 19.); (5) A copy of the unsigned Declaration of Inmate Lloyd Wendell Layne, Jr. (Id., pp. 21 - 22.);[3] (6) A copy of Inmate Smith's letter addressed to Warden Coakley dated November 6, 2014 (Id., pp. 24 - 28.); (7) A copy of the Affidavit of Inmate Nicholas Barbati dated August 31, 2012[4] (Id., pp. 30 - 31.); and (8) A copy of Inmate Barbati's Complaint as filed in Civil Action No. 5:12-04716 (Id., pp. 33 - 40.)

## **THE STANDARD**

### **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

---

[3]   Inmates Harlow, Martin, and Layne merely declare that they "have witnessed Officer Charles Turner make profane and racially derogatory statements on several occasions." The foregoing inmates do not state that they witnessed Defendant Turner verbally abuse Plaintiff or use excessive force upon Plaintiff.

[4] Inmate Barbati's statements and Complaint involve allegations of his personal situation with Defendant Turner. There are no statements concerning the allegations set forth in Plaintiff's Complaint.

U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing

sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## <u>DISCUSSION</u>

### 1.    <u>Motion for Default Judgment</u>:

In his Motion for Default Judgment, Plaintiff requests that the Court "enter default of all defendants in the above captioned action for failure to plead or otherwise defend in a timely manner." (Document No. 24.) Plaintiff states that "[t]he summonses were returned as 'Executed' for all defendants and defendant Charles E. Samuels, Jr. on April 13, 2015 and April 16, 2015." (<u>Id.</u>) Plaintiff contends Defendants' Answers were due by June 9, 2015, and June 12, 2015. (<u>Id.</u>) Plaintiff argues that Defendants "have failed to plead, answer, or otherwise respond." (<u>Id.</u>) As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Affidavit (<u>Id.</u>, pp. 4 - 5.); and (2) A copy of the Docket Sheet (<u>Id.</u>, pp. 6 - 9.).

Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . .." A plaintiff must produce *prima facie* evidence that service was proper. <u>J & J Sports Productions, Inc. v. Santillan</u>, 2012 WL 2861378, at * 4 (M.D.N.C. July 11, 2012). "A return of service generally serves as *prima facie* evidence that service was validly

performed." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). If a plaintiff produces *prima facie* evidence, the burden shift to the defendant to provide evidence of insufficient process. Hollander v. Wolf, 2009 WL 3336012, at * 3 (S.D.Fla. Oct. 14, 2009).

After reviewing all of the pleading and filings in this case, the undersigned finds that Defendants did not default by failing to respond to Plaintiff's Complaint. The record reflects that the Court granted Defendants' "Motion for Extension of Time to Respond" on June 10, 2015. (Document No. 20.) Specifically, the Court ordered that "Defendants shall file their Answer or other responsive pleadings by July 12, 2015. (Id.) Defendants timely entered a pleading in this case by filing their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" on June 9, 2015. (Document No. 18.) Accordingly, the undersigned recommends that Plaintiff's Motion for Default Judgment (Document No. 24) be denied.

## 2.    FTCA Claim:

### A.    The United States as a Party.

In its Motion, the United States argues that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant. (Document Nos. 18 and 19.) In Response, Plaintiff argues states that "he NEVER intended to make any claims listed in his Complaint pursuant to the Federal Tort Claims Act." (Document No. 27, pp. 13 - 14.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq*., authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under

circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980).

Although Plaintiff alleges that he only intended to assert a Bivens claim against Defendants, the undersigned notes that Plaintiff alleged that Defendant Turner assaulted him by striking him in the arms, legs, and groin area. To the extent Plaintiff is asserting a FTCA claim based upon the alleged torts committed by the individual Defendants, the undersigned finds that the United States must be substituted as the defendant. Accordingly, the undersigned recommends that the individual Defendants should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant.

**B.      Exhaustion of Administrative Remedies.**

In its Motion, the United States argues that Plaintiff failed to exhaust his administrative remedies on his FTCA claim, which deprives this Court of subject matter jurisdiction and requires dismissal of his FTCA claims. (Document Nos. 18 and 19.) Specifically, the United States explains that Plaintiff did not file an administrative claim with the agency. (Document No. 19, pp. 9 -10.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 18-1, pp. 2 - 3.) Ms. Wahl

10

declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration: "Plaintiff has not filed a FTCA administrative tort claim with the DOP regarding his tort claims of negligence and assault and battery." (Id.) In Response, Plaintiff merely notes that he did not intend to assert a FTCA claim. (Document No. 27, pp. 13 - 14.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[5] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot

---

[5]  Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[6] See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA. Plaintiff does not dispute that he failed to exhaust his administrative remedies. Additionally, Plaintiff fails to produce any documents indicating that he exhausted his FTCA claim.[7] Plaintiff merely states that he was

---

[6]   The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

[7]   Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For *Bivens* purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dale v. Lappin*, 376 F.3d at 655 (internal citations omitted); *also see Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

unaware of the exhaustion requirement. Plaintiff's lack of knowledge, however, is no excuse for his failure to exhaust. See Rogers v. United States, 675 F.2d 123, 124 (6th Cir. 1982)(per curiam)(finding that plaintiff's lack of knowledge did not eliminate the jurisdictional requirement that a timely administrative claim be filed); Fuentes v. Parks, 2005 WL 911442, * 2 - 3 (S.D.N.Y. Apr. 18, 2005)(finding that even though plaintiff was proceeding *pro se*, ignorance of the exhaustion requirement does not excuse the filing of a timely administrative claim). Accordingly, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust.

---

The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. *Id.*, § 542.18. If the inmate's Request is directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. *Id.*, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. *Id.*, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. *Id.*, § 542.17(c).

13

3.      **Bivens Claim**:

    A.      **Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[8] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an

---

[8] 42 U.S.C. § 1997e(a) provides as follows:

        No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the

15

outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the

Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to

filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative

remedies during the pendency of the federal suit." Thus, the PLRA requires that available

administrative remedies must be exhausted before the filing of a suit in Federal Court. It is

further clear that the PLRA does not require that an inmate allege or demonstrate that he has

exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional

Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is

an affirmative defense. Prison officials have the burden of proving that the inmate had available

remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir.

2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner

filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the

defendants have the burden of pleading and proving." (Citations omitted)) The Court is not

precluded, however, from considering at the outset whether an inmate has exhausted

administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense
> to be pleaded and proven by the defendant. That exhaustion is an affirmative
> defense, however, does not preclude the district court from dismissing a
> complaint where the failure to exhaust is apparent from the face of the complaint,
> nor does it preclude the district court from inquiring on its own motion into
> whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that

"a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's

administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also

see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that

16

"[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a).

17

The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants contend that Plaintiff did not exhaust his administrative remedies regarding his claims of "supervisory liability against Director Samuels, Jr., Warden Coakley, or Executive Assistant/Camp Administrator LeMaster. (Document Nos. 18 and 19.) Defendants, however, acknowledge that Plaintiff exhausted his administrative remedies regarding the alleged racial comments and physical assault." (Id.) In support, Defendants submit the Declaration of Ms. Wahl stating as follows: "Plaintiff did exhaust his prison inmate administrative remedies regarding the alleged racial comments and physical assault on him. However, Plaintiff has not filed any administrative remedies alleging supervisory liability against Director Samuels, Jr., Warden Coakley, or Executive Assistant/Camp Administrator LeMaster." (Document No. 18-1, p. 2.)

In Response, Plaintiff argues that Defendants' above argument is without merit. (Document No. 27, pp. 14 - 18.) Plaintiff argues that he "is not required to plead legal theories in the exhaustion of administrative remedies." (Id.) Plaintiff notes that in exhausting his remedies, he "listed that he was assaulted by a staff member through and by the exercise of excessive force, and that the excessive force was based on the perceived race of the victim." (Id.) Accordingly, Plaintiff argues that he fully exhausted his administrative remedies. (Id.)

18

Based upon a review of the record, the undersigned finds that Plaintiff fully exhausted his administrative remedies regarding the alleged racial comments and physical assault. The record, however, is void of any evidence that Plaintiff fully exhausted his administrative remedies concerning his failure to supervise claim against Defendants Samuel, Coakley, and LeMaster. A review of Plaintiff's grievances reveal that he failed to complain about any alleged misconduct by Defendants Samuel, Coakley, and LeMaster. Plaintiff's grievances did not put prison authorities on fair notice that he was claiming that Defendants Samuel, Coakley, and LeMaster knew of the use of racial comments and excessive force by Defendant Turner but failed to take appropriate action. Thus, there is no indication that prison officials were put on notice of, and the given the opportunity to address, Plaintiff's supervisory claims against Defendants Samuel, Coakley, and LeMaster. See Davison v. Davis, 2015 WL 996629, * 4 (W.D.N.C. March 6, 2015)(dismissing a claim against Defendant Beaver where "nothing in the grievance gave prison official notice and the opportunity to address Plaintiff's failure to supervise claim against Beaver before Plaintiff brought this action"). Accordingly, the undersigned respectfully recommends that Defendants Samuel, Coakley, and LeMasters' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

### B.     Defendants Cannot be Sued in their Official Capacities:

In their Motion, Defendants argue that they cannot be sued in their official capacities. (Document Nos. 18 and 19.) Therefore, Defendants stated that "to the extent they are named in their official capacities, [they] must be dismissed as defendants in this action, as an action against 'federal officers in their official capacities is essentially a suit against the United States, [and] such suits are [] barred under the doctrine of sovereign immunity . . ..'" (Id.)

19

In Response, Plaintiff states that "[t]he defendants are NOT being sued in their official capacities." (Document No. 27, p. 19.) Plaintiff states that he "is keenly aware that 28 U.S.C. 1331 requires that defendants are to be sued in their individual capacities." (Id.)

An inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002)("[A] Bivens action does not lie against either agencies or officials in their official capacities."); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Such claims are barred by operation of the doctrine of sovereign immunity. McClosky v. Mueller, 446 F.3d 262, 271 - 272 (1st Cir. 2006)("The Bivens doctrine . . . does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.") A plaintiff, however, may seek injunctive relief against a federal officer in his or her official capacity. Everett v. Francis, 2009 WL 2971359, * 4 (N.D.W.Va. Sep. 16, 2009)("[T]he Bivens requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief."); also see Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n. 10 (4th Cir. 2004)(stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Community Mental Health Services of Belmont v. Mental Health & Recovery Bd., 150 F.Appx. 389, 401 (6th Cir. 2005)("[A] plaintiff should not be able to sue a defendant in his individual

capacity for an injunction in situations in which the injunction relates only to the officials' job, i.e., his official capacity."); <u>Singletary v. Fallen</u>, 2012 WL 368375 (D.S.C. Jan. 17, 2012)(finding that sovereign immunity does not protect federal officials from suit naming them in their official capacities when injunctive relief rather than damages is sought.).

To the extent Plaintiff is seeking monetary damages against Defendants in their official capacities, his <u>Bivens</u> claim should be dismissed. As stated above, <u>Bivens</u> claims seeking monetary damages are not actionable against defendants acting in their official capacities. Accordingly, the Court recommends that Plaintiff's claim for monetary damages against Defendants in their official capacity be dismissed.

### C.      Claim of Verbal Abuse:

In his Motion, Defendant Turner argues Plaintiff's claim of verbal abuse or harassment must be dismissed. (Document Nos. 18 and 19.) First, Defendant Turner denies that he made racial remarks or used foul language towards Plaintiff. (Document No. 18, p. 13.) Second, Defendant Turner argued that Plaintiff's claim must be dismissed because "mere verbal harassment does not give rise to a constitutional violation." (<u>Id.</u>)

In Response, Plaintiff states that he "does NOT claim that the verbal abuse committed by Defendant Charles Turner, standing alone, violates the Plaintiff's constitutional rights." (Document No. 27, pp. 24 - 27.) Plaintiff states that he "does submit that the vile reprehensible, racially derogatory, profane language used by Defendant Turner is indicia of the culpable state of mind of Defendant Turner on November 6, 2014." (<u>Id.</u>, p. 25.) Citing "the New Testament Books of Matthew (12:34) and Luke (6:45)," Plaintiff argues that "for out of the abundance of the heart, the mouth speaks." (<u>Id.</u>, p. 25.) Plaintiff contends that "[o]n November 6, 2014,

21

Defendant Charles Turner espoused what was in his heart by calling Plaintiff a 'Johnny Cochran bastard and a Malcolm X piece of s**t.'" (<u>Id.</u>) Plaintiff alleges that the verbal abuse by Defendant Turner was unprovoked. (<u>Id.</u>) Plaintiff states that "based on Plaintiff's experience as a 56 year old African American from North Carolina, racists unanimously hate three prominent African Americans:" Dr. Martin Luther King, Jr.; Johnny Cochran, and Minister Malcolm X. (<u>Id.</u>, p. 26.) Thus, Plaintiff concludes that Defendant Turner is a racist because he referred to Plaintiff as Johnny Cochran and Malcolm X. (<u>Id.</u>) Plaintiff states that he was the victim of Defendant Turner's alleged "hatred" towards African Americans on November 6, 2014. (<u>Id.</u>)

Although Plaintiff appears to contend that he is not alleging that Defendant Turner's alleged verbal abuse violated his constitutional rights, Plaintiff continues to claim that he was a victim of Defendant Turner's racial comments and profane language. The undersigned finds that allegations of verbal abuse or verbal harassment of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse by a prison guard does not give rise to a cause of action under § 1983); <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (explaining that "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); <u>Ivey v. Wilson</u>, 832 F.2d 950, 954-55 (6th Cir. 1987) (verbal abuse and harassment by prison officials do not state a constitutional violation under § 1983); <u>Morrison v. Martin</u>, 755 F. Supp. 683, 687 (E.D. N.C.) ("[w]ords by themselves [including verbal abuse or profanity] do not state a constitutional claim, without regard to their nature"), <u>aff'd</u>, 917 F.2d 1302 (4th Cir. 1990). Furthermore, there is no indication that the alleged verbal abuse resulted in an actual injury or a substantial risk of serious harm to Plaintiff. Based on the

foregoing, the undersigned finds that Plaintiff's claim of verbal abuse or harassment should be dismissed.

### D.      Excessive Force:

In their Motion to Dismiss, Defendants argue that Plaintiff excessive force claim should be dismissed. (Document Nos. 18 and 19.) First, Defendants note that they dispute that Defendant Turner punched Plaintiff twice in the groin. (Document No. 19, p. 21.) Next, Defendants argue that "[w]hat actually occurred was a routine pat search of Plaintiff's outer clothing that did not result in any physical injury." (Id.) Defendants contend that "to the extent force was used in conducting the pat search, it was *de minimus* physical force, and therefore is excluded from the Eighth Amendment's ban on cruel and unusual punishment." (Id.)

In Response, Plaintiff argues that "[t]he assault on the Plaintiff was indeed excessive and wanton." (Document No. 27, pp. 39 - 46.) Plaintiff contends that "the state of mind and the intentions of Defendant Charles Turner is obvious." (Id., p. 46.) Plaintiff alleges that Defendant Turner was "intent on causing severe physical injury to Plaintiff." (Id.) Plaintiff contends that a showing of "serious injury" is unnecessary because Defendant Turner's "malicious and sadistic use of excessive force to cause harm to the Plaintiff is determinant of the Plaintiff's claim of unconstitutional use of excessive force." (Id.)

As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v.

Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (citations omitted). To establish a violation of the Eighth Amendment in the context of a challenge to prison officials' use of force, an inmate must allege (1) that the prison officials acted with a "sufficiently culpable state of mind" under a subjective standard and (2) "sufficiently serious" injury an objective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-25, 115 L.Ed.2d 271 (1991); also see Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008).

     To establish the subjective component, an inmate must demonstrate that prison officials applied force "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085. In determining whether prison officials acted maliciously and sadistically, the following factors must be balanced: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Additionally, the absence of serious injury is relevant to the determination of prison officials' culpable intent, but is not dispositive. Id.

"With regard to the objective component, '[t]he Eighth Amendment's prohibition . . . necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind." Harris v. Salley, 339 Fed.Appx. 281, 284 (4th Cir. 2009), citing Hudson, 503 U.S. at 9 - 10, 112 S.Ct. at 1000. Additionally, "absent the most extraordinary circumstances," an inmate must demonstrate more than *de minimis* pain or injury. See Hudson, 503 U.S. at 9, 112 S.Ct. at 1000; Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Extraordinary circumstances exist where the use of force is 'repugnant to the conscience of mankind . . . or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury." Harris, 339 Fed.Appx. at 284(citation omitted). The objective component standard is significantly less demanding than required in the context of challenges to conditions of confinement because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9, 112 S.Ct. at 1000 ("This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.") Dislocation of a shoulder in the handcuffing a person and the resulting pain may constitute more than a *de minimis* injury. See Bane v. Virginia Department of Corrections, 267 F.Supp.2d 514, 532 (W.D.Va. 2003).

The undersigned finds that Plaintiff has failed to state a constitutional claim of excessive force. Plaintiff alleges that Defendant Turner struck him in the arms, legs, and groin area during a pat search. Although Plaintiff claims that Defendant Turner "viciously struck Plaintiff in his

groin area twice,"[9] Plaintiff gives no indication that he suffered "more than *de minimis* pain or injury." Plaintiff merely states that Defendant Turner's alleged use of force caused him to "winced in pain." See Calderson v. Foster, 2007 WL 1010383 (S.D.W.Va. March 30, 2007)(Physical pain alone is insufficient to constitute more than a *de minimis* injury). There record contains no evidence that Plaintiff suffered from pain or sought medical treatment following the incident. After the Warden received Plaintiff's letter complaining of the alleged assault, Plaintiff was sent to Health Services for an evaluation on November 12, 2014 (6 days after the alleged assault). (Document No. 18-1, pp. 5 - 6.) Plaintiff's medical records reveal that he denied any pain, failed to report any bruising, and refused to have his groin area examined by medical staff. (Id.) Medical staff also noted that Plaintiff was walking with a normal gait. (Id.) Furthermore, in their letters addressed to the Warden dated November 6, 2014, neither Plaintiff nor Inmate Smith indicated that Plaintiff suffered an injury as a result of Defendant Turner's alleged misconduct. (Document No. 18-5, pp. 4 - 8, 15 - 19.) In his Complaint, Plaintiff merely alleges that Defendant Turner's alleged misconduct resulted in "soreness and bruising to his

---

[9]   The record reveals that both Plaintiff and Inmate Smith changed their statements regarding whether Defendant Turner conducted an aggressive pat search using his open hand or intentionally punched Plaintiff in the groin area with his fist. By letter dated November 6, 2014, Plaintiff notified Warden Coakley that Defendant Turner punched him in the groin area twice during a pat search. (Document No. 18-5, pp. 15 - 19.) By letter dated November 6, 2014, Inmate Smith notified Warden Coakley that Defendant Turner made insulting and racial comments to Plaintiff and conducted an "aggressive search." (*Id.*, pp. 4 - 8.) By Affidavit dated January 12, 2015, Inmate Smith stated that Defendant Turner conducted an aggressive pat search of Plaintiff. (Document No. 27-1, p. 10.) By Affidavit signed March 17, 2015, Plaintiff stated that "Turner hit me in my groin with his flat open hand." (Document No. 18-5, p. 12.) By Affidavit signed March 24, 2015, Inmate Smith stated that he "observed Turner intentionally strike Mack twice in his groin with his fist. (*Id.*, p. 23.) In Defendant Turner's Declaration, he denies striking Plaintiff and states that he "performed a normal pat search." (Document No. 18-2.) In his Declaration, Defendant Elmore states that he "did observe Mr. Turner conduct a pat search on Plaintiff, but contrary to Plaintiff's allegations, I did not see Mr. Turner hit Plaintiff or strike him in the groin." (Document No. 18-4.)

groin, arms, and legs." The Court, therefore, finds that any injury suffered by Plaintiff was *de minimis*. <u>See</u> <u>Perez v. United States</u>, 330 Fed.Appx. 388, 389 (3rd Cir. 2009)(*De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for."); <u>Hill v. Crum</u>, 727 F.3d 312 (4th Cir. 2013)(citations omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); <u>Chavero-Linares v. Smith</u>, 2013 WL 5655559 (N.D. Iowa Oct. 15, 2013)("a relatively minor scratch or cut and cheek pain, even if this cheek pain was ongoing, is still *de minimis* as a matter of law because [plaintiff] suffered no serious long-term pain and received no medical attention for her injury"); <u>Karavias v. Virginia</u>, 2013 WL 3879701, * 4 (W.D.Va. July 26, 2013)(indicating that plaintiff's bruises and scrapes were *de minimis*); <u>Sublet v. United States</u>, 2011 WL 690533, * 3 (W.D.La. Jan. 28, 2011)(finding a bruise to be *de minimis*), <u>aff'd</u>, 451 Fed.Appx. 458 (5th Cir.), <u>cert. denied</u>, ___ U.S. __, 132 S.Ct. 1961, 182 L.Ed.2d 788 (2012); <u>Homen v. United States</u>, 2002 WL 844347 (S.D.N.Y. May 2, 2002)(finding a three-centimeter abrasion that required only minor first aid, "one or two Tylenols," no difficulty sleeping, and no problem going about his daily routine *de minimis*). Plaintiff also fails to allege any facts that establish extraordinary circumstances where a plaintiff can prevail when he suffers only *de minimis* injury. The Court notes that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" <u>Wilkins</u>, 130 S.Ct. at 1178, <u>citing</u> <u>Hudson</u>, 503 U.S. at 9, 112 S.Ct. at 995; <u>See also</u> <u>Whitely</u>, 475 U.S. at 319, 106 S.Ct. at 1086(finding that the infliction of pain in the course of prison security measures does not amount

27

to cruel and unusual punishment simply because it may appear in retrospect that the degree of force applied was unreasonable); Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010)("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

### E.    Emotional or Psychological Damages:

In their Motion, Defendants argue that Plaintiff's claim for emotional or psychological damages should be dismissed. (Document No. 18 and 19.) Defendants argue that "[u]nder the PLRA, no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Document No. 19, p. 18.) Defendants claim that Plaintiff did not suffer a serious physical injury. (Id., p. 19.)

In Response, Plaintiff first argues that he can satisfy the four elements establishing his claim for intentional infliction of emotional distress under West Virginia law.[10] (Document No. 27, pp. 32 - 33.) Second, Plaintiff states that Defendant Turner "intended to injure the Plaintiff through the use of excessive physical force and verbal abuse." (Id., p. 33.) Plaintiff states that "[w]hile the blows by the Defendant were painful, the Plaintiff's clothing and muscularity

---

[10]   To the extent Plaintiff is attempting to assert a claim of intentional infliction of emotional distress under West Virginia law, his claim should be dismissed. Viewing Plaintiff's claim against Defendants as constituting a claim under West Virginia law, the District Court cannot consider it under its supplemental jurisdiction because, as the undersigned finds herein, Plaintiff has failed to state any other claim for which relief can be granted over which the District Court has original jurisdiction. Accordingly, Plaintiff's above claim should be dismissed because he has failed to state a claim upon which relief can be granted.

prevented permanent injury." (Id.) Finally, Plaintiff argues that his claims should proceed because even though he did not suffer a "debilitating physical injury," he was injured by the assault. (Id., pp. 33 - 39.)

The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).

In his Complaint, Plaintiff requests damages for the physical pain and emotional damages he suffered. Concerning his allegations of injury, Plaintiff merely states that he suffered soreness to his arms, legs, and groin area. The record, however, contains no evidence supporting the existence of a physical injury as the result of Defendants' conduct. Plaintiff allegation of physical pain is insufficient as physical pain alone is considered an emotional injury. See

<u>Calderon v. Foster</u>, 2007 WL 1010383, * 8 (S.D.W.Va. March 30, 2007)(J. Johnston). As stated above, at most Plaintiff has alleged only a *de minimis* injury. Thus, Plaintiff's conclusory allegation that he is entitled to damages is inadequate. Accordingly, the Court finds that Defendants' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other reasons which Defendants have submitted for dismissal.

**4.**     <u>**Motion for Temporary Restraining Order and a Preliminary Injunction**</u>:

In his Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff requests that Defendants' "be enjoined from retaliating against Plaintiff." (Document No. 25.) Specifically, Plaintiff requests that Defendants be prohibited from the following: (1) "Placing Plaintiff in segregated/isolated housing;" (2) "Denying Plaintiff access to the law library and legal materials;" (3) "Interfering with Plaintiff's incoming and outgoing mail;" (4) "Denying Plaintiff telephone access;" (5) "Attempting to intimidate, threaten, or otherwise harass Plaintiff;" (6) "Unjustifiably transferring Plaintiff to another Bureau of Prisons facility;" and (7) "Subjecting Plaintiff to additional verbal and physical abuse by staff." (<u>Id.</u>) Plaintiff claims that "unless the requested relief is granted the Plaintiff will not be able to effectively prosecute the aforementioned 'Complaint' filed with this Court." (<u>Id.</u>)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be

required.

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in <u>Hoechst Diafoil Company v. Nan Ya Plastics Corporation</u>, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' <u>Granny Goose</u>, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

Based upon the foregoing, the undersigned has recommended that Plaintiff's Complaint be dismissed as to all Defendants. Accordingly, the undersigned finds that Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Default Judgment (Document No. 24), **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 18), **DENY** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 25), **DISMISS** Plaintiff's Complaint (Document No. 1), and remove this matter from the Court's

docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 20, 2016.

Omar J. Aboulhosn
United States Magistrate Judge