**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

BENNIE AUSTIN MACK, JR.,

                  Plaintiff,

v.                                    CIVIL ACTION NO.   5:15-cv-03589

OFFICER CHARLES TURNER, et al.,

                  Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *pro se Complaint for Damages* (Document 1), brought on the grounds that a prison employee intentionally struck him during a pat search, causing pain and injury.   By *Standing Order* (Document 3) entered on March 25, 2015, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.   On January 6, 2016, following the retirement of Magistrate Judge VanDervort, this action was referred to the Honorable Omar J. Aboulhosn.   On January 20, 2016, Magistrate Judge Aboulhosn submitted a *Proposed Findings and Recommendation* (PF&R) (Document 32), wherein it is recommended that this Court deny the Plaintiff's motion for default judgment, grant the Defendants' motion to dismiss, or in the alternative, motion for summary judgment, deny the Plaintiff's motion for a temporary restraining order and preliminary injunction, dismiss the Plaintiff's complaint, and remove this matter from the Court's docket.   The Plaintiff timely

objected to the PF&R.   For the reasons stated herein, the Court finds that the Plaintiff's objections should be sustained in part and overruled in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Aboulhosn's PF&R sets forth in great detail the procedural and factual history surrounding the Plaintiff's claims.   The Court now incorporates by reference those facts and procedural history.   In order to provide context for the ruling herein, the Court provides the following summary.

Plaintiff Bennie Mack filed his complaint on March 25, 2015.   He named the following Defendants: Charles Turner, Travis Elmore, Charles E. Samuels, Jr., Joel Coakley, David LeMaster, and [Erica] Stock, all in their official and individual capacities.   On June 9, 2015, the Defendants filed their *Motion to Dismiss, or in the Alternative, Motion for Summary Judgment* (Document 18), *Memorandum of Law in Support* (Document 19), and supporting exhibits.[1]   The Plaintiff filed a *Motion for Temporary Restraining Order and Preliminary Injunction* (Document 25) on June 19, 2015.   The Plaintiff filed his *Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment* (Document 27) and supporting exhibits on July 8, 2015.   The Magistrate Judge entered his PF&R on January 20, 2016, and following an extension of time, the Plaintiff filed his *Objections to Proposed Findings and Recommendations of Magistrate Judge* (Document 38) on February 22, 2016.   The Defendants filed their *Response to*

---

1 On June 3, 2015, the Defendants sought an extension of time to file a responsive pleading.   The Magistrate Judge granted the extension on June 10, 2015.   However, the June 9, 2015 motion to dismiss was filed within the original deadline.   The Plaintiff later filed a response opposing any extension of time and a motion for default judgment based on the asserted untimeliness of the Defendants' response.   (Documents 23 & 24.)   As the Defendants' motion was timely filed, the Plaintiff's motion for default must be denied.

*Plaintiff's Objection to the Proposed Findings and Recommendation* (Document 39) on February 29, 2015.

The Plaintiff, an African-American male inmate at the Satellite Prison Camp (Camp) at FCI-Beckley, and another inmate, Ricky Smith, were both orderlies at FCI-Beckley.   They went to the Camp message center on November 6, 2014, to seek a ride to the FCI.   Defendants Travis Elmore and Charles Turner were both present.   Mr. Elmore told the Plaintiff and Mr. Smith that they would report to work later that day.   Mr. Turner's trained police dog was in his personal vehicle outside.   According to the Plaintiff, Mr. Turner walked over to him, bypassing Mr. Smith, and, while looking directly at him, said "hey, you, I need you to go outside and put the lid down on my black bitch."   (B. Mack Declaration at ¶ 19) (Document 27-1.)   Mr. Turner admits to making a statement along those lines.   (C. Turner Declaration at ¶ 8) (Document 18-2.)   He claims that it was raining heavily and he realized the side vents on the dog kennel in the back of his vehicle, holding his highly trained and valuable black female German Shepard, were open. (*Id.* at ¶ 7.)   Mr. Turner further explains that he was speaking jokingly to Mr. Elmore, and that it is common for dog trainers to refer to female dogs as "bitches."   (*Id.* at ¶¶ 8–10.)   Mr. Elmore indicates that he did not hear Mr. Turner's statement.   The Plaintiff contends that he saw Mr. Elmore watching the exchange and laughing.   (T. Elmore Declaration at ¶ 5) (Document 18-4); (B. Mack Declaration at ¶ 20.)

The Plaintiff and Mr. Smith left the message center.   In discussing the incident with Mr. Smith, the Plaintiff became concerned that he had disregarded a direct order.   (B. Mack Declaration at ¶25.)   Mr. Smith returned to the message center with the Plaintiff to serve as a witness to any further inappropriate behavior by Mr. Turner.   (R. Smith Affidavit at 2) (Document

2.)   The Plaintiff asked Mr. Turner if he had given him a direct order when he was there previously.   (B. Mack Declaration at ¶ 30.)[2]   Both the Plaintiff and Mr. Smith recall that Mr. Turner responded with a series of racially provocative insults.   (B. Mack Declaration at ¶¶ 30–32; R. Smith Affidavit at 2.)

Mr. Turner then conducted a pat search of the Plaintiff.   Mr. Smith states that Mr. Turner ordered Mr. Mack "to turn around so that [Mr. Turner] could search [Mr. Mack] and give [Mr. Mack] something else to write [Mr. Turner] up about."   (R. Smith Affidavit at 2.)   Mr. Smith described the pat search as "aggressive," and, in an affidavit submitted during the administrative remedy process, stated that he observed Mr. Turner strike Mr. Mack in the groin twice during the search.   (*Id.*; March 24, 2015 R. Smith Affidavit at ¶¶ 14–15, att'd as Def.'s Ex. 5, Document 18-5.)   The Plaintiff states that:

> Defendant Turner started the "pat search" with open handed violent, forceful pats or hits to my arms, shoulder, neck and torso areas.   As the extremely violent "pat search" continued, defendant Turner bent down and began to violently strike my lower back and legs, eventually reaching my groin area from the back.   Upon reaching my groin area, I felt two extremely violent blows in my groin area. I winced in pain at which time defendant Turner shouted in my ear "shut the f**k up."

(B. Mack Declaration at ¶ 34.)[3]   The Plaintiff contends that he saw Mr. Elmore and Defendant Erica Stock watching the assault and laughing.

Both the Plaintiff and Mr. Smith state that Mr. Turner made threatening and derogatory comments to both of them following the alleged assault.   (*Id.* at ¶¶ 37–39; R. Smith Affidavit at

---

2 In Mr. Turner's account, the Plaintiff returned and "stated something to the effect of, 'were you talking to me?'" in a confrontational manner, and did not respond to questions.   (C. Turner Declaration, at ¶¶ 13–14.)
3 As noted by the Magistrate Judge, the Plaintiff's and Mr. Smith's written statements provided during the administrative remedy process and in this litigation contain slight variations.   (PF&R at 26, note 9.)

2.)[4]   About twenty minutes later, an announcement on the intercom by Mr. Elmore directed orderlies to report to the message center.   (B. Mack Declaration at ¶ 42.)   The Plaintiff and Mr. Smith were among those to report.   The Plaintiff and Mr. Smith contend that Mr. Elmore told Mr. Smith to remain after excusing the other orderlies.   (*Id.* at ¶ 47; R. Smith Affidavit at 3.)   Mr. Smith states that Mr. Turner proceeded to shout at him, and tried to convince him to agree that Mr. Turner had been 'nice' to the Plaintiff.   (R. Smith Affidavit at 3–4.)   Mr. Smith indicates that Ms. Stock was nearby, and that he overheard her ask Mr. Elmore what was going on.   (*Id.* at 4.)   Ms. Stock states that she did not see Mr. Turner interacting with the Plaintiff, and briefly observed, but did not overhear, a conversation between Mr. Turner and Mr. Smith that appeared to be routine. (E. Stock Declaration at ¶ 6) (Document 18-3.)   Mr. Turner claims that he spoke with Mr. Smith at some point after the pat search to ask what the Plaintiff's issue was, but did not use profanity or attempt to intimidate him.   (C. Turner Declaration at ¶P 19–20.)

The Plaintiff went to the clinic on November 12, 2014, six days after the incident. According to the medical report, the Plaintiff reported receiving two blows to the groin area with a closed fist during a pat down, and experiencing soreness for about five hours afterward. (Clinical Encounter Report, att'd as Attachment A to Def.'s Ex. 1) (Document 18-1.)   He appeared well, walked normally, and declined a physical exam of the groin area.   (*Id.*)

The Plaintiff promptly filed an administrative complaint against Mr. Turner, Mr. Elmore, and Ms. Stock.   The Defendants concede that he exhausted his prison administrative remedies

---

4 In addition to his own declaration and the affidavit from Mr. Smith, the Plaintiff provided declarations from other inmates, stating that they had observed Mr. Turner making profane, racist, and derogatory comments, and/or using excessive force on various occasions during his employment at the prison.   (J. Harlow Declaration, B. Martin Declaration, L. Layne Declaration) (Document 27-1.)

"regarding the alleged racial comments and physical assault on him."   (S. Wahl Declaration at ¶ 5.) (Document 18-1.)   The Plaintiff's administrative filings do not mention supervisory liability or name Defendants Samuels, Coakley, or LeMaster.   The Plaintiff did not file an administrative tort claim pursuant to the Federal Tort Claims Act (FTCA).

## STANDARD OF REVIEW

### A.   Objections to PF&R

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).   When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.   Summary Judgment

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–

(c); see also *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position.   *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

7

**DISCUSSION**

*A.  FTCA Claims*

The Magistrate Judge recommended dismissal of claims brought pursuant to the FTCA for failure to exhaust administrative remedies.   The Petitioner objected only to clarify that he had not intended to bring an FTCA claim.   Thus, there is no need for de novo review by this Court, and no FTCA claims may go forward.

*B.  Bivens Claim*

The Magistrate Judge recommended that constitutional claims brought pursuant to *Bivens v. Six Unknown Federal Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) be dismissed.   First, he found that the Plaintiff had failed to exhaust administrative remedies for his failure to supervise claim against Defendants Samuel, Coakley, and LeMaster.   Next, he recommended that the Plaintiff's *Bivens* claims against the Defendants in their official capacities be dismissed to the extent the Plaintiff is seeking monetary damages.   The Magistrate Judge further found that the Plaintiff's claims regarding verbal abuse or harassment are insufficient to state a constitutional deprivation.   Finally, the Magistrate Judge recommended that the Defendants' motion for summary judgment be granted as to the Plaintiff's excessive force claim, finding that "any injury suffered by Plaintiff was *de minimis*" and that the Plaintiff had failed to allege any extraordinary circumstances permitting recovery for *de minimis* injuries.   (PF&R at 27.)

The Plaintiff does not object to dismissal of his *Bivens* claims against the Defendants in their official capacities to the extent monetary damages are sought.   He also clarifies that he did not intend to bring an independent *Bivens* claim for verbal abuse or harassment, but argues that

8

the allegations of verbal abuse provide context and support for the allegations of physical abuse and excessive force.   Thus, no *Bivens* claim seeking monetary damages against the Defendants in their official capacities should go forward, and no independent *Bivens* claim for verbal abuse should go forward.

The Plaintiff's first substantive objection concerns the dismissal of his failure to supervise claim against Defendants Samuels, Coakley, and LeMaster.   The Defendant argues that it is not necessary to name all individuals that may be part of a later civil suit or to specify all theories of liability to exhaust administrative remedies.   The Court finds that this objection must be overruled, and the Plaintiff's claims against Defendants Samuels, Coakley, and LeMaster must be dismissed for failure to exhaust administrative remedies.

*Bivens* established a cause of action against federal officials for the violation of an individual's Constitutional rights.   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).   The Prison Litigation Reform Act (PLRA) bars actions by inmates "until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 520 (2002) (holding that the "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences" including incidents of assault).   The United States Supreme Court has held that the PLRA requires "proper exhaustion," including compliance with the procedures and deadlines established by the prison.   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).   Such exhaustion is required "even where the relief sought—monetary damages—cannot be granted by the administrative process."   *Id.* at 85. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA,

that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).   "[I]f the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate."  *Davidson v. Davis*, No. 3:13-CV-590-FDW, 2015 WL 996629, at *3 (W.D.N.C. Mar. 6, 2015) (dismissing a failure to supervise claim where the plaintiff's administrative grievance allegations focused on excessive force and did not mention failure to supervise).

The Plaintiff's administrative grievance forms and appeals do not reference either the names of the supervisory defendants nor any claim or grievance related to the failure to supervise. The Plaintiff focused exclusively on Defendant Turner's alleged profane statements and physical assault, and Defendants Elmore and Stock's failure to intervene.   Accordingly, the Court finds that the Bureau of Prisons had no meaningful opportunity to address the alleged failure of Defendants Samuels, LeMaster, and Coakley to supervise the remaining Defendants.   Therefore, the Magistrate Judge's recommendation to dismiss the failure to supervise claims must be adopted.

Next, the Plaintiff objects to dismissal of his excessive force claim.  He cites case law from the United States Supreme Court holding that plaintiffs are not required to show serious or significant injury, as the inquiry should instead focus on whether the prison official's use of force was unnecessary, wanton, or malicious.   The Defendants filed a response to the Plaintiff's objections, arguing that the evidence established that the Plaintiff did not suffer any injury at all. The Defendants contend that the Plaintiff did not produce sufficient evidence to permit a reasonable juror to find that anything more than a pat search occurred.

The United States Supreme Court held in 1992 that the "core inquiry" in excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).   The Court described several factors that courts could consider to evaluate whether the level of force used could have been considered necessary, including the extent of an inmate's injury.   *Id.* at 7. It specified that the bar on cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."   *Id.* at 9–10 (internal quotation marks omitted).

Until 2010, the Fourth Circuit interpreted that language to mean that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*."   *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) *abrogated by Wilkins v. Gaddy*, 559 U.S. 34 (2010).   In 2010, the Supreme Court reversed a Fourth Circuit case that rested on the *Norman* standard.   *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).   The Court held that its decision in *Hudson* did not set an injury threshold for excessive force claims, but instead "shift[ed] the core judicial inquiry from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm."   *Id.* at 39 (internal quotation marks and punctuation omitted).   The Fourth Circuit has since held that, in light of *Wilkins*, "there is no *de minimis* injury threshold for an excessive force claim."   *Hill v. Crum*, 727 F.3d 312, 316 (4th Cir. 2013).

The Court finds that summary judgment is not appropriate as to the Plaintiff's excessive force claim.   At this stage, the Court must view the evidence in the light most favorable to the Plaintiff as the non-moving party.   It is undisputed that Mr. Turner conducted a pat search of the Plaintiff on November 6, 2014.   Although Mr. Turner asserts that the Plaintiff was agitated and confrontational, there is no evidence suggesting that the Plaintiff resisted during the pat search.

The Defendants do not contend that any force beyond that inherent in a pat search was necessary. The Plaintiff has provided a declaration—as well as the letters that formed his administrative grievance—stating that Mr. Turner punched him on the arms, legs, back, torso, and groin under the guise of conducting a pat search.   In his declarations and affidavits, Mr. Smith either described the pat search as 'aggressive' or corroborated the Plaintiff's statement that Mr. Turner punched him in the groin.   Mr. Elmore contends that he was present and did not see or hear anything to support the Plaintiff's allegations.   The Plaintiff and Mr. Smith both describe verbal harassment and threats preceding and following the alleged assault.

Clearly, there is factual dispute with respect to whether Mr. Turner punched the Plaintiff. Resolving that factual dispute will require credibility determinations, which must be made by the trier of fact.   Viewing the evidence in the light most favorable to the Plaintiff, a reasonable juror could find that Mr. Turner assaulted the Plaintiff.   Under the applicable case law, the Plaintiff's version of the facts would constitute excessive force prohibited by the Eight Amendment. Repeatedly punching an unresisting prisoner and striking him in the groin is a malicious and sadistic use of force intended to cause pain, not a good-faith use of force necessary to maintain order or discipline in a prison environment.[5]   This is true regardless of the severity of the resulting injury to the victim.   The Court finds that the Plaintiff's objections as to the Magistrate Judge's

---

5 In their memorandum in support of their motion to dismiss or for summary judgment, the Defendants assert that they are entitled to qualified immunity.   Qualified immunity shields public officials from suits alleging injuries related to actions taken in the course of their job-related duties.   It is unavailable if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…"   *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal emphases omitted).   "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).   As the Court's discussion of the case law on excessive force makes clear, the status of the law prohibiting the use of force as recounted by the Plaintiff was settled as of 2010, at the latest.   No reasonable prison employee could have believed that, with no security threat or extraordinary circumstances, it was constitutional to punch an unresisting inmate in the groin.

12

recommendation that his excessive force claim be dismissed must be sustained, and the Defendants' motion for summary judgment as to that claim must be denied.

### C.  Failure to Intervene

The Defendants moved for dismissal of the Plaintiff's allegations against Mr. Elmore and Ms. Stock for failing to intervene when Mr. Turner allegedly assaulted the Plaintiff, arguing that "there was nothing to intervene in" because Mr. Turner merely conducted a routine pat search. (Mem. in Supp. of Def.s' Mot. at 18.)   Because the Magistrate Judge found that there was no cognizable claim for excessive force, he did not address the failure to intervene in the PF&R.

Prison officials may be held liable under the Eighth Amendment for failure to intervene if they displayed deliberate indifference to a harmful prison condition or risk of harm to an inmate. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   Because the Defendants focused their arguments on whether the Plaintiff was subjected to an assault, the record is scant as to whether Mr. Elmore and/or Ms. Stock had a duty to intervene.   The Plaintiff avers that Mr. Elmore was present for the entire altercation, beginning with Mr. Turner's first statement to the Plaintiff.   He further avers that both Mr. Elmore and Ms. Stock were present and laughingly observed the physical assault, which was both preceded and followed by profane and racist comments.   Under the facts presented[6] and when viewed as required at this stage, the Court finds that it is possible that the Plaintiff could prevail on his failure to intervene claims against Mr.

---

6 Though, as noted, the evidence before the Court with respect to Ms. Stock and Mr. Elmore's failure to intervene is not well-developed, the Court is hesitant to grant summary judgment against a pro-se Plaintiff prior to completion of discovery, on grounds not specified in the Defendants' motion, as the Plaintiff lacked notice of alternate grounds for dismissal and therefore lacked the opportunity to produce any relevant evidence.

Elmore and Mr. Stock, and so the Defendants' motion for summary judgment must be denied as to those claims.

### D.  Intentional Infliction of Emotional Distress

The Magistrate Judge recommends dismissal of the Plaintiff's claim for emotional or psychological damages because the PLRA prohibits recovery for mental or emotional injury absent a showing of physical injury.   Alternatively, if the Plaintiff seeks to state a claim for intentional infliction of emotional distress (IIED) under West Virginia law, the Magistrate Judge recommends dismissal for lack of federal jurisdiction, due to his recommendation that the Plaintiff's constitutional claims be dismissed.   The Plaintiff objects, arguing that his injuries were more than *de minimis* and that he adequately stated an IIED claim under West Virginia law.

As previously held, the Plaintiff's excessive force claim may proceed, and the Plaintiff may attempt to prove any damages related to that claim.   To the extent he seeks to bring a separate IIED claim under West Virginia law, the claim must be dismissed.   IIED is a state law tort claim which may be brought against federal officials only pursuant to the FTCA.   28 U.S.C. § 2679(b)(1) (making the FTCA the exclusive remedy for torts committed by government employees acting within the scope of employment).   The Plaintiff did not file an administrative tort claim and has expressly disclaimed any intention of seeking relief under the FTCA.   Therefore, his IIED claim must be dismissed.

### E.  Motion for Temporary Restraining Order and Preliminary Injunction

The Plaintiff seeks a temporary restraining order enjoining the Defendants from retaliating against him.   He requests that the Defendants be prohibited from placing him in segregated housing, denying him access to the law library and legal materials, interfering with his mail,

denying him telephone access, attempting to intimidate, threaten, or harass him, unjustifiably transferring him to another facility, and subjecting him to additional verbal or physical abuse.   The Magistrate Judge recommends that "the Plaintiff's request for injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits," based on the recommendation that the Plaintiff's underlying case be dismissed.   (PF&R at 31.)   The Plaintiff objects to the finding that he is unlikely to succeed on the merits.   He states that the Defendants reversed their retaliatory actions and suggests that the Magistrate Judge "withheld ruling on the Plaintiff's 'Motion' indefinitely in order to give the Defendants time to curtail their retaliatory behavior. (Obj. at 29.)

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).   Plaintiffs must satisfy all four requirements.   *JAK Prods., Inc. v. Bayer*, 616 F. App'x 94, 95 (4th Cir. 2015) (unpublished, per curiam opinion).

The Plaintiff's motion for injunctive relief focuses on two main issues: alleged retaliation against him for bringing suit, and interference with his ability to access resources necessary to pursue this litigation.   The Court can find no evidence in the record suggesting that the Plaintiff has been unable to access legal resources or the mail, nor can the Court conclude that the Plaintiff has shown a likelihood of irreparable harm absent injunctive relief.   Indeed, the Plaintiff suggests in his objections that the Defendants have curtailed their allegedly retaliatory behavior.   The Magistrate Judge properly recommended that the Plaintiff's motion for a temporary restraining order or preliminary injunction be denied.

**CONCLUSION**

WHEREFORE, following thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Objections to Proposed Findings and Recommendations of Magistrate Judge* (Document 38) be **SUSTAINED IN PART AND OVERRULED IN PART.**   The Court **ORDERS** that the *Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment* (Document 18) be **GRANTED** as to all claims against any Defendant in his or her official capacity, all claims against Defendants Charles E. Samuels, Joel Coakley, and David LeMaster, and all tort claims.   However, the Court **ORDERS** that the motion be **DENIED** as to the *Bivens* claims asserted against Defendants Charles Turner, Travis Elmore, and Erica Stock.

The Court further **ORDERS** that the Plaintiff's *Request to Enter the Default of Defendants Charles Turner, Et Al.* (Document 24) be **DENIED** and that the Plaintiff's *Motion for Temporary Restraining Order and Preliminary Injunction* (Document 25) be **DENIED.**

Finally, the Court **ORDERS** that this matter be **REFERRED** to the Honorable Omar J. Aboulhosn for presentation of evidence and submission of Proposed Findings and Recommendation with respect to the Plaintiff's *Bivens* claims, in accordance with this Order.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Honorable Omar J. Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER:        March 14, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA