# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

|  |  |  |
|---|---|---|
| **BENNIE AUSTIN MACK, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-03589** |
| | ) | |
| **CHARLES TURNER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendant Stock's Motion for Summary Judgment (Document No. 66; (2) Defendant Elmore's Motion for Summary Judgment (Document No. 68); and (3) Defendant Turner's Motion for Summary Judgment (Document No. 70). The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 73.) Plaintiff filed his Response in Opposition on December 2, 2016. (Document No. 85.) Defendants filed their Reply on December 5, 2016. (Document No. 89.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motions should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On March 25, 2015, Plaintiff, acting *pro se* and an inmate at FPC Beckley, filed his Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403

U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 1.) Plaintiff names the

following as Defendants: (1) Officer Charles Turner; (2) Travis Elmore; (3) Charles E. Samuels,

Jr.; (4) Joel Coakley; (5) David LeMaster; and (6) E. Stock. (Id.) Plaintiff alleges that on

November 6, 2014, Defendant Charles Turner, "an off duty BOP employee who is not assigned

to the Federal Prison Camp, approached the Plaintiff (the only black person in the lobby) and

ordered him to go outside in the rain to his personal vehicle and 'close the lid on his black

bitch.'"[2] (Document No. 1, p. 3.) Plaintiff states that he "looked at Defendant Charles Turner and

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]  In his Declaration, Defendant Turner states as follows (Document No. 18-2):

> 6.  On November 6, 2014, I brought my highly trained black German
> Shepherd to give a demonstration on dog obedience to the inmates in the
> dog program. My dog is SVV1 titled dog, a certification obtained in the
> Czech Republic for extensive police style training. She is worth
> approximately $10,000.

> 7.  It was raining very heavily when I arrived at the SPC. When I entered
> the SPC, I realized that I had forgotten to close the side vents on the dog
> kennel located in the bed of my personal truck.

> 8.  Mr. Elmore was working as the Camp One Officer at that time. As I
> entered the SPC Message Center, I told Officer Elmore, in a joking
> manner, to go out there and close the lid on my "Black Bitch."

> 9.  I said this as a joke to Mr. Elmore because it was raining so hard and I
> knew Mr. Elmore would not do it. I am not sure if Mr. Elmore even
> heard me say that.

> 10.  I made the reference to my dog as a "Black Bitch" because she is a black
> female German Shepherd, and it is common language for dog trainers to
> refer to female dogs as "bitches" when they about them.

> 11.  I did not say that to be offensive to anyone, and I certainly was not
> talking to Plaintiff when I made the statement. Additionally, I would
> never have an inmate go to my personal vehicle and have any

2

just walked out of the message center." (Id., p. 4.) Plaintiff alleges that once he had returned to the housing unit, he became concerned that Defendant Turner was giving him a direct order. (Id.) Plaintiff states that he and his co-worker Ricky Smith, returned to the message center to inquire whether Defendant Turner was giving him a direct order. (Id.) Plaintiff claims that "Defendant Turner stated that he was giving me a direct order, but then changed his mind and stated that he was kidding." (Id.) Plaintiff contends that Defendant Turner then became verbally abusive and instructed Plaintiff to "turn around so that he could search him and give a real reason to write him up." (Id.) Plaintiff alleges that "under the guise of a pat search, [Defendant Turner] began hitting Plaintiff on his arms and the back of his neck, he continued to strike Plaintiff on his legs and then viciously struck Plaintiff in his groin area twice, causing the Plaintiff severe pain and discomfort." (Id.) Plaintiff claims that when he "winced in pain Defendant Turner screamed in his ear 'shut the f**k up." (Id., p. 5.) Plaintiff asserts that "[a]fter the pat search . . ., Defendant Turner turned his rage on inmate Ricky Smith and called him 'a f**king coward and a spineless bastard' for being there as a witness." (Id.) Plaintiff claims that Defendant Turner continued to be verbally abusive and instructed him and Inmate Smith to "get the f**k out of his sight before he f**ked us up." (Id.) Plaintiff alleges that he and Inmate Smith only responded by obeying Defendant Turner's orders. (Id.) Plaintiff complains that Defendant Travis Elmore was present and merely laughed "as Defendant Charles Turner physically and verbally assaulted the Plaintiff." (Id.) Plaintiff further claims that Defendant E. Stock was present for a portion of the assault, but took no action. (Id.)

Plaintiff claims that approximately 20 minutes after leaving the message center,

---

unsupervised contact with my extremely valuable dog.

Defendant Elmore instructed all camp orderlies to report to the message center. (Id.) Plaintiff asserts that Defendant Elmore asked all the inmate orderlies their names and then ordered them to return to their housing unit with the exception of Inmate Smith. (Id., p. 6.) Plaintiff alleges that Defendant Turner and Elmore proceeded to assault Inmate Smith "and attempted to intimidate and coerce him into saying that Defendant Turner didn't make any derogatory statements to the Plaintiff." (Id.) Plaintiff contends that Defendant Stock was again present, but did nothing to stop the intimidation or assault. (Id.) As a result of the foregoing, Plaintiff alleges that he "suffered pain and injuries, including soreness and bruising to his groin, arms, and legs, and has experienced anxiety attacks, an inability to sleep through the night, elevated blood pressure, loss of appetite, nightmares, and feelings of anger." (Id., pp. 6 - 7.) Plaintiff requests monetary and declaratory relief. (Id., pp. 8 - 9.)

Plaintiff paid the $400.00 filing and administration fee on April 6, 2015. (Document No. 5.) On April 8, 2015, United States Magistrate Judge R. Clarke VanDervort directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the Defendants as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure. (Document No. 6.)

On June 9, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 18 and 19.) First, Defendants argued that Plaintiff's FTCA claim should be dismissed because: (1) "The United States is the only proper party in an FTCA claim" (Document No. 19, pp. 8 - 9.); and (2) "Plaintiff failed to exhaust his FTCA claim" (Id., pp. 9 - 10.). Next, Defendants argued that Plaintiff's Bivens claims should be dismissed because: (1) "Plaintiff failed to exhaust

administrative remedies on all of his allegations" (<u>Id.</u>, pp. 11 - 12.); (2) "The Defendants cannot be sued in their official capacities" (<u>Id.</u>, pp. 12 - 13.); (3) "Verbal harassment and/or threats do not rise to the level of a constitutional violation (<u>Id.</u>, pp. 13 - 14.); (4) The Court lacks personal jurisdiction over Defendant Samuels (<u>Id.</u>, pp. 14 - 15.); (5) "The evidence refutes Plaintiff's allegations of being struck" (<u>Id.</u>, pp. 15 - 17.); (6) "Defendants Elmore and Stock were not required to intervene in a pat search" (<u>Id.</u>, p. 18.); (7) "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury" (<u>Id.</u>, pp. 18 - 19.); (8) Plaintiff's claim of excessive force should be dismissed (<u>Id.</u>, pp. 19 - 22.); and (9) Defendants are entitled to qualified immunity (<u>Id.</u>, pp. 22 - 24.).

As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 18-1, pp. 2 - 3.); (2) A copy of Plaintiff pertinent medical records (<u>Id.</u>, pp. 5 - 6.); (3) A copy of Administrative Remedy Number 802274 (<u>Id.</u>, pp. 8 - 15.); (4) A copy of Plaintiff's "Chronological Disciplinary Record" (<u>Id.</u>, p. 17.); (5) The Declaration of Charles Turner (Document No. 18-2.); (5) The Declaration of Erica Stock (Document No. 18-3.); (6) The Declaration of Travis Elmore (Document No. 18-4.); (7) The Declaration of Derek Smith (Document No. 18-5, p. 2.); (8) A copy of a letters addressed to Warden Coakley from Plaintiff and Inmate Smith dated November 6, 2014 (<u>Id.</u>, pp. 4 - 9, 15 - 20.); (9) A copy of Plaintiff's SIS Affidavit (<u>Id.</u>, pp. 11 - 13.); and (10) A copy of the Affidavit of Inmate Smith (<u>Id.</u>, pp. 22 - 25.).

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 11, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 22.) On June 18, 2015, Plaintiff filed his Motion for Default Judgment. (Document No. 24.) Plaintiff

filed a Motion for Temporary Restraining Order and Preliminary Injunction on June 19, 2015. (Document No. 25.) On July 8, 2015, Plaintiff filed his Response in Opposition to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 27.) As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's Declaration dated June 17, 2015 (Document No. 27-1, pp. 2 - 7.); (2) A copy the "Sworn Affidavit of Ricky Ray Smith" dated January 12, 2015 (Id., pp. 9 - 13.); (3) A copy of the Declaration of Inmate John Harlow dated July 3, 2015 (Id., pp. 15 - 16.); (4) A copy of the Declaration of Inmate Brian Scott Martin dated June 25, 2015 (Id., pp. 18 - 19.); (5) A copy of the unsigned Declaration of Inmate Lloyd Wendell Layne, Jr. (Id., pp. 21 - 22.);[3] (6) A copy of Inmate Smith's letter addressed to Warden Coakley dated November 6, 2014 (Id., pp. 24 - 28.); (7) A copy of the Affidavit of Inmate Nicholas Barbati dated August 31, 2012[4] (Id., pp. 30 - 31.); and (8) A copy of Inmate Barbati's Complaint as filed in Civil Action No. 5:12-04716 (Id., pp. 33 - 40.)

By Proposed Findings and Recommendation ["PF&R"] entered on January 20, 2016, the undersigned recommended that the District Court deny Plaintiff's Motion for Default Judgment (Document No. 24), grant Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 18), and deny Plaintiff's Motion for Temporary Restraining Order (Document No. 25). (Document No. 32.) Plaintiff filed his Objections on

---

[3]  Inmates Harlow, Martin, and Layne merely declare that they "have witnessed Officer Charles Turner make profane and racially derogatory statements on several occasions." The foregoing inmates do not state that they witnessed Defendant Turner verbally abuse Plaintiff or use excessive force upon Plaintiff.

[4]  Inmate Barbati's statements and Complaint involve allegations of his personal situation with Defendant Turner. There are no statements concerning the allegations set forth in Plaintiff's Complaint.

February 22, 2016. (Document No. 38.) Defendants filed their Response on February 29, 2016. (Document No. 39.) By Memorandum Opinion and Order entered on March 14, 2016, United States District Judge Irene C. Berger sustained in part and overruled in part the undersigned's PF&R. (Document No. 40.) Specifically, Judge Berger granted Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment "as to all claims against any Defendant in his or her official capacity, all claims against Defendants Charles E. Samuels, Joel Coakley, and David LeMaster, and all tort claims." (Id.) Judge Berger denied Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment "as to the Bivens claims asserted against Defendants Charles Turner, Travis Elmore, and Erica Stock."[5] (Id.) On March 25, 2016, Defendants Turner, Elmore, and Stock filed their Answers to Plaintiff's Complaint. (Document Nos. 43 – 45.) Judge Berger entered a Scheduling Order on April 11, 2016. (Document No. 50.)

On October 7, 2016, Defendants Stock, Elmore, and Turner filed Motions for Summary Judgment and Memorandums in Support. (Document Nos. 66 – 71.) In her Motion, Defendant Stock argues that she is entitled to summary judgment based upon the following: (1) She is entitled to qualified immunity because Bivens liability has not been extended to an Eighth Amendment bystander claim and there is no evidence of a constitutional violation (Document

---

[5] Concerning Plaintiff's FTCA claim, Judge Berger concluded "there is no need for de novo review by this Court" because Plaintiff objected to the PF&R to clarify that he had not intended to bring a FTCA claim. (Document No. 40.) Concerning Plaintiff's Bivens claim, Judge Berger concluded as follows: (1) "[N]o Bivens claim seeking monetary damages against the Defendants in their official capacities should go forward, and no independent Bivens claim for verbal abuse should go forward;" (2) Plaintiff's objection to the PF&R was overruled concerning dismissal of Plaintiff's failure to supervise claim against Defendants Samuels, Coakley, and LeMaster for his failure to exhaust administrative remedies; (3) Plaintiff's objection to the PF&R was sustained concerning dismissal of Plaintiff's excessive force claim due to issues of material fact; (4) Defendant's motion for summary judgment was denied as to Plaintiff's failure to intervene claim against Defendants Elmore and Stock; (5) Plaintiff's separate intentional infliction of emotional distress claim under West Virginia law was dismissed; and (6) Plaintiff's Motion for Temporary

No. 67, pp. 3 – 13.); (2) "Plaintiff, as a matter of law, cannot establish bystander <u>Bivens</u> liability against Erica Stock" (<u>Id.</u>, pp. 13 – 16.); (3) The judgment bar of the FTCA forecloses Plaintiff's <u>Bivens</u> claim (<u>Id.</u>, p. 16); and (4) "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose to which this defendant objects." (<u>Id.</u>, pp. 16 – 17.) As an Exhibit, Defendant Stock attaches a copy of pertinent pages from Inmate Ricky Ray Smith's Deposition. (Document No. 66, pp. 4 – 26.)

In his Motion, Defendant Elmore argues that he is entitled to summary judgment based upon the following: (1) He is entitled to qualified immunity because <u>Bivens</u> liability has not been extended to an Eighth Amendment bystander claim and there is no evidence of a constitutional violation (Document No. 69, pp. 2 – 12.); (2) "Plaintiff, as a matter of law, cannot establish bystander <u>Bivens</u> liability against Travis Elmore" (<u>Id.</u>, pp. 12 – 14.); (3) The judgment bar of the FTCA forecloses Plaintiff's <u>Bivens</u> claim (<u>Id.</u>, p. 14); and (4) "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose to which this defendant objects." (<u>Id.</u>, p. 15.) As an Exhibit, Defendant Elmore attaches a copy of pertinent pages from Inmate Ricky Ray Smith's Deposition. (Document No. 68, pp. 4 – 26.)

In his Motion, Defendant Turner argues that he is entitled to summary judgment based upon the following: (1) He is entitled to qualified immunity because there is no evidence of a constitutional violation and the Eighth Amendment as applied to pat searches is not clearly defined (Document No. 71, pp. 2 – 9.); (2) "Plaintiff, as a matter of law, fails to establish that Mr. Turner 'punched' Plaintiff" (<u>Id.</u>, pp. 9 – 12.); (3) The judgment bar of the FTCA forecloses Plaintiff's <u>Bivens</u> claim (<u>Id.</u>, pp. 10 - 11); and (4) "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose to which this defendant objects." (<u>Id.</u>, p. 11.)

Restraining Order and Preliminary Injunction was denied.

As an Exhibit, Defendant Turner attaches a copy of pertinent pages from Inmate Ricky Ray Smith's Deposition. (Document No. 70, pp. 4 – 26.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on October 14, 2016, advising him of the right to file a response to the Defendants' Motions for Summary Judgment. (Document No. 73.) On December 2, 2016, Plaintiff filed his Response in Opposition. (Document No. 85.) Defendants filed their Reply on December 5, 2016. (Document No. 89.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences

which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

1.    **Defendants Stock and Elmore's Motions for Summary Judgment:**

    A.    **No Extension of <u>Bivens</u>:**

In their Motions, Defendants Stock and Elmore argue that <u>Bivens</u> liability has not been extended to an Eighth Amendment bystander claim. (Document No. 67, pp. 4 - 13 and Document No. 69, pp. 3 – 12.) Defendants contend that "[w]hile courts regularly treat <u>Bivens</u> law as analogous to § 1983 law, it is only appropriate to apply § 1983 law to <u>Bivens</u> cases when a cause of action is recognized under both <u>Bivens</u> and 1983." (<u>Id.</u>) Defendants argue that unlike a Section 1983 claim, a <u>Bivens</u> claim is a judge-made remedy implied by a court directly from the Constitution. (<u>Id.</u>) Defendants contend that "[i]n the years following <u>Bivens</u>, the Supreme Court has extended <u>Bivens</u> in only two contexts – under the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment." (<u>Id.</u>) Defendants, therefore, argue that "[g]iven the Supreme Court's reluctance to extend <u>Bivens</u> remedies and their preference to have Congress tailor an appropriate remedy, judicial prudence weighs against extending the Eighth Amendment to encompass bystander liability under the umbrella of an excessive force clause brought under <u>Bivens</u>." (<u>Id.</u>) Finally, Defendants argue that "consistent with the Supreme Court's limited application of <u>Bivens</u> liability," Defendants should not have to consider the expansion of Section 1983 actions as automatically applying to them in the <u>Bivens</u> context. (<u>Id.</u>)

In Response, Plaintiff argues that the above issue has "already been addressed by the

10

Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend Bivens to permit suit against a federal agency); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend Bivens to an Eighth Amendment claim against employees of a privately operated

prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend Bivens in a military context).

Defendants Stock and Elmore argue that this Court should dismiss Plaintiff's bystander liability claim because it would require this Court to recognize a new cause of action under Bivens. The undersigned, however, disagrees. In the instant case, there is no need to consider extending Bivens beyond its core premise. A prisoner may bring a Bivens claim against the offending individual federal officer, subject to the defense of qualified immunity. Here Plaintiff is asserting a Bivens claim against two federal correctional officers, Defendants Stock and Elmore. With respect to the constitutional deprivation, Plaintiff is alleging a violation of the Eighth Amendment. Bivens has clearly been extended to include Eighth Amendment claims. Similar to supervisory liability, bystander liability is predicated upon a violation of a constitutional right. Plaintiff alleges that Defendants Stock and Elmore were deliberately indifferent to his safety in violation of the Eighth Amendment. Specifically, Plaintiff contends that Defendants Stock and Elmore acted with deliberate indifference in failing to intervene to protect him from excessive force used by a fellow correctional officer. Accordingly, the undersigned finds that Defendants above argument is without merit.

## B.    Qualified Immunity:

In their Motions, Defendants Stock and Elmore first argue that Bivens liability has not been extended to an Eighth Amendment bystander claim. (Document No. 67, pp. 4 - 13 and Document No. 69, pp. 3 – 12.) Citing Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411 (4th Cir. 2014) and Randall v. Prince George's County, Md., 302 F.3d 188 (4th Cir. 2002), Defendants note that "[i]n 2002, the Fourth Circuit recognized a cause of action pursuant to 42

U.S.C. § 1983, for bystander liability 'premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" (Id.) Although Defendants note that the Fourth Circuit in <u>Randall</u> stated that "several of our sister circuits have adopted a framework for accessing bystander liability for law officers," Defendants "argue that none of the cases cited held that <u>Bivens</u> was applicable to an Eighth Amendment bystander liability claim." (<u>Id.</u>) Defendants explain that <u>Mick v. Brewer</u>, 76 F.3d 1127 (10th Cir. 1996) involved a Section 1983 claim against state actors and the Tenth Circuit reversed the granting of qualified immunity without any discussion as to bystander liability. (<u>Id.</u>) Although there was sufficient evidence presented at trial to warrant an instruction on the duty to intervene in <u>Anderson v. Branen</u>, 17 F.3d 552 (2nd Cir. 1994), Defendants note that this case involved a Fourth Amendment <u>Bivens</u> claim. (<u>Id.</u>) Defendants further complain that the Second Circuit cited Section 1983 cases in support of bystander liability. (<u>Id.</u>) Defendants assert that a "search in Westlaw revealed no <u>Bivens</u> case where a court held a prison official liable for violating an inmate's constitutional right to be free from the excessive use of force based on a theory of bystander liability." (<u>Id.</u>) Defendants note that only two cases were found where bystander liability in a use of force context was mentioned: <u>Tatum v. Shoemaker</u>, 2012 WL 899633 (W.D. Va. March 16, 2012) and <u>Lowe v. United States</u>, 2015 WL 5009310 (E.D.N.C. Aug. 21, 2015). Defendants argue that in <u>Tatum</u> the Western District of Virginia relied upon Section 1983 cases for providing the framework for the bystander liability claim and the claims were ultimately dismissed based on plaintiff's failure to establish that any defendant violated a civil right. (<u>Id.</u>) Defendants contend even though the Eastern District of North Carolina in <u>Lowe</u> determined that Plaintiff was asserting an Eighth Amendment bystander lability claim, the Court determined that

the exhaustion defense required further development. (Id.) Therefore, Defendants argue that neither Court in Tatum or Lowe addressed the issue of whether a federal inmate may successfully hold a bystander liable for an injury sustained as a result of excessive force by another officer. (Id.) Defendants further argue that "[w]hile courts regularly treat Bivens law as analogous to § 1983 law, it is only appropriate to apply § 1983 law to Bivens cases when a cause of action is recognized under both Bivens and 1983." (Id.) Therefore, Defendants argue that "[t]he status of the Eighth Amendment for pat searches was not clearly established on November 6, 201[4]." (Id.)

In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808,

815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "The burden of proof and persuasion with respect to a defendant of qualified immunity rest on the official asserting that defense." Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

When determining whether a right was "clearly established," "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, ___ U.S. ___, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015)(per curiam)(emphasis in original). After defining the right, the Court must ask whether the right was "clearly established" at the time defendants acted. To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Stated another way, a right is "clearly established" when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix, 136 S.Ct. at 308(quoting Reichie v. Howards, ___ U.S. ___,

15

132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)). "[E]xisting precedent must have placed that statutory or constitutional question beyond debate." Carroll v. Carman, ___ U.S.___, 135 S.Ct. 348, 350, 190 L.Ed.2d 311 (2014). This, however, does not mean that a court must have decided the issue under factually identical circumstances. "Clearly established does not mean that the very actions in question have previously been held unlawful; rather, it merely means that, in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent." Brown v. Mitchell, 327 F.Supp.2d 615, 643 (E.D. Va. 2004). A courts analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Courts in the Fourth Circuit look only to decisions of the United States Supreme Court, the Fourth Circuit, and the highest court in the state in which the case arose. Wilson v. Kittoe, 337 F.3d 392, 402 (4th Cir. 2003).

   In the instant case, Defendants Stock and Elmore first argue that they are entitled to qualified immunity because bystander liability has not been extended to an Eighth Amendment Bivens action. Next, Defendants argue that even assuming a constitutional right was violated, such a constitutional right was not "clearly established." As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food,

16

clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Prison officials in charge of an inmate's custody may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's safety when the official knows that the inmate faces a substantial risk of serious harm and possessing such knowledge disregards that risk by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate human conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.") Thus, prison officials may be held liable under the Eighth Amendment for failure to intervene if they display deliberate indifference to a harmful prison condition or risk of harm to an inmate. See Davidson v. Cannon, 474 U.S. 344, 348 – 49, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)(noting that it is well established that inmates have a constitutional right of "freedom from unjustified intrusions on personal security"). Prison officials must take reasonable steps to protect prisoners from physical harm by others. Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997); Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987); also see Solesbee v. Witkowski, 56 F.3d 62, 4 (4th Cir. 1995)(nothing that "[t]he general duty of prison officials to protect inmates committed to their care [is] clearly established"); Short v. Greene, 2009 WL 3644935 (S.D.W.Va. Oct. 30, 2009)(noting that a correctional officer has a duty to intervene in an altercation between a prisoner and a correctional officer or a prisoner and another inmate). In 1978, the Fourth Circuit recognized that "a correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the rights of the victim inmate." Gordon v.

17

Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978). In 2002, the Fourth Circuit determined that "[a]lthough personal liability premised on an omission is a disfavored concept, it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability." Randall v. Prince George's County, Md., 302 F.3d 188, 203 (4th Cir. 2002); also see Brown v. Snead, 886 F. Supp. 547, 552 (S.D.W.Va. 1995)(An "officer may not stand idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf.") In 2014, the Fourth Circuit recognized "a cause of action for bystander liability 'premised on a[n] . . . officer's duty to uphold the law and protect the public from illegal acts, regardless who commits them.'" Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014)(quoting Randall, 302 F.3d at 203); also see Bacon v. Woods, 616 Fed.Appx. 601 (4th Cir. July 1, 2015)(apply bystander liability concept against a correctional officer concerning an inmate's deliberate indifference claim).

Based on the foregoing, Plaintiff's Eighth Amendment rights were "clearly established" at the time of Defendants' alleged misconduct (November 6, 2014). Although Defendants correctly argue that the decisions in Randall and Stevenson involve Section 1983 claims, the undersigned finds such does not establish that Plaintiff was not deprived of a "clearly established" constitutional right. Although the decisions in Randall and Stevenson involved Section 1983 claims, these decisions do not indicate bystander lability was limited to the action of State officers or Section 1983 claims. As stated above, the Supreme Court has determined that it is not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson, 483 U.S. at 640, 107 S.Ct. at 3034. Bystander liability is predicated upon a violation of a constitution right. In the instant case, the violated constitutional right is the Eighth

18

Amendment. <u>Bivens</u> clearly applies to Eighth Amendment violations. It is well recognized that "[i]n limited setting where <u>Bivens</u> does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." <u>Iqbal</u>, 556 U.S. at 675-76, 129 S.Ct. 1937(<u>quoting</u> <u>Hartman v. Moore</u>, 547 U.S. 250, 254, n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)). A <u>Bivens</u> claim is analogous to a claim under Section 1983 and case law involving Section 1983 claims is applicable in a <u>Bivens</u> action. <u>See</u> <u>Farmer</u>, 511 U.S. at 839, 114 S.Ct. at 1970. After the decisions in <u>Randall</u> and <u>Stevenson</u>, the undersigned finds that it was sufficiently clear to a reasonable officer, federal or state, that standing idly by while another officer uses excessive force upon an inmate is a violation of that inmate's Eighth Amendment rights. <u>See</u> <u>Jamison v. Taylor</u>, 2016 WL 723046 (W.D.V.A. Feb. 22, 2016)(finding that a federal correctional officer could be held liable based upon bystander liability for filing to intervene to stop excessive force by a fellow officer)(<u>citing</u> <u>Randall</u>, 302 F.3d at 204); <u>also see</u> <u>Carlson</u>, 446 U.S. 14, 100 S.Ct. at 1468(comparing <u>Bivens</u> to Section 1983 cases and holding that "the 'constitutional design' would be stood on its head if federal officials did not face at least the same liability as state officials guilty of the same constitutional transgression")

Next, Defendants Stock and Elmore argue that the status of the Eighth Amendment for pat searches was not clearly established on November 6, 2014. (Document No. 67, pp. 12 - 13 and Document No. 69, pp. 11 – 12.) Citing <u>Rhoten v. Werhultz</u>, 243 Fed.Appx. 364 (10th 2007), Defendants argue that squeezing the nipples and buttocks of an inmate and pulling on his testicles was determined not to be an Eighth Amendment violation. (<u>Id.</u>) Citing <u>Lewis v. Carrell</u>, 2013 WL 593663 (D.Kan. Feb. 15, 2013), Defendants argue that an officer's act of grabbing the inmate's penis and applying pressure during a pat search was determined not to be an Eighth

Amendment violation. (Id.) In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)(citations omitted); also see Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 178, 175 L.Ed.2d 995 (2010). Different from Rhoten and Lewis where allegations concerned pulling, grabbing, or applying pressure to the groin area, Plaintiff states that his groin area was violently struck or punched. The undersigned notes that violently striking or punching an inmate in the groin area during a non-resistant pat search could clearly establish that the prison official applied force "maliciously and sadistically for the very purpose of causing harm." See Tedder v. Johnson, 527 Fed.Appx. 269, 274 (4th Cir. 2013)("[The] malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law."); Brown v. Jones, 471 Fed.Appx. 420, 421 (5th Cir. 2012)(finding plaintiff stated a claim for violation of his Eighth Amendment rights where "[plaintiff] alleged, in a verified complaint, that during a pat down search [the defendant] struck [the plaintiff] in the groin and squeezed his testicles in an unnecessary and sadistic attack for the purpose of causing him pain."); Clark v. Compton, 2008 WL 2356739, * 3 – 4 (N.D.Ind. June 4, 2008)(finding plaintiff stated an excessive force claim where he testified that after submitting to handcuffs, the defendant, "while smiling, drove his right knee directly into [plaintiff's] groin.") Although the "Eighth Amendment's prohibition . . . necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind," the "contemporary standards of decency are always violated" when a prison official maliciously and sadistically uses force to

cause harm. Harris v. Salley, 339 Fed.Appx. 281, 284 (4th Cir. 2009), citing Hudson, 503 U.S. at 9 - 10, 112 S.Ct. at 1000. Striking or punching a male in the groin area during a non-resistant pat search clearly evidences the malicious and sadistic use of force for the sole purpose of causing harm. See Wilkins, 559 U.S. at 34, 1130 S.Ct. at 1176(noting that it is clearly established that harming an inmate without any legitimate purpose and without provocation violates the Eighth Amendment's prohibition on cruel and unusual punishment). Therefore, a reasonable officer would have been aware that standing idly by while another officer violently struck or punched an inmate in the groin area during a non-resistant pat search was a violation of that inmate's constitutional rights under the Eighth Amendment. Based on the foregoing, the undersigned finds that Defendants are not entitled to qualified immunity because the facts viewed in the light most favorable to Plaintiff establish a deprivation of an actual constitutional right, which was clearly established at the time of the purported violation.

### C.    No evidence of excessive force:

Finally, Defendants Stock and Elmore argue that the evidence, as a matter of law, does not rise to a constitutional violation allegedly observed by Defendants which would have triggered a presumed Bivens bystander liability imposed by Fourth Circuit precedent. (Document No. 67, pp. 8 – 11, 15 - 16 and Document No. 69, pp. 12 - 14.) Defendants argue that based on the evidence, none of the subjective component of an alleged Eighth Amendment violation can be established. (Id.) Defendants first argue that there is no evidence that any forced used by Defendant Turner in conducting the pat search was done malicious and sadistic to cause harm. (Id.) Next, Defendants argue that the "objective component evidence similarly does not support a constitutional violation. (Id.) Defendants state that Plaintiff complains that he only "winced in

pain" and Plaintiff acknowledges that "his clothing and muscularity prevented permanent injury." (Id.) Thus, Defendants argue that "Plaintiff's testimony about his lack of serious injury along with the self-contradictions about 'punches' places the pat search in the malevolent touching and thus constitutional category." (Id.)

In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

The undersigned will consider whether Defendants violated Plaintiff's clearly established constitutional rights by standing idly by while Defendant Turner subjected Plaintiff to excessive force during the pat search. For the reasons stated below, the undersigned finds there are issues of material fact regarding the circumstances surrounding the incident between Plaintiff and Defendants. See Tolan v. Cotton, ___ U.S. ___, 134 S.Ct. 1861, 1865-68, 188 L.Ed.2d 895 (2014)(per curiam)(noting that when resolving a qualified immunity issue in a summary judgment motion, courts must view the facts in the light most favorable to the non-moving party and may not resolve genuine dispute of facts in favor the defendants); also see Herrera v. City of New Brunswick, 2008 WL 305275, * 10 (D.N.J. Feb. 1, 2008)("Whether [an officer] had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless considering all the evidence, a reasonable jury could not possibly conclude otherwise.")(citing Anderson v. Branen, 17 F.3d 552, 557 (2nd Cir. 1994)).

Specifically, there is an issue of material fact concerning whether Defendant Turner used excessive force during the pat search of Plaintiff. Plaintiff alleges that Defendant Turner violently struck him in the arms, legs, and groin area during a pat search. Plaintiff claims that Defendant Turner "viciously struck [him] in his groin area twice." The record reveals that both Plaintiff and Inmate Smith changed their statements regarding whether Defendant Turner conducted an aggressive pat search using his open hand or intentionally punched Plaintiff in the groin area with his fist.[6] Although Defendants are correct that Plaintiff's conflicting versions of the facts cannot create a genuine of issue of fact precluding summary judgment, the undersigned finds that an issue of fact remains regarding whether Defendant Turner used excessive force in conducting the pat search. See Erwin v. United States, 591 F.3d 313, 325 n. 7 (4th Cir. 2010)("A genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's [evidence] is correct"); Alba v. Merrill Lynch & Co., 198 Fed.Appx. 288, 300 (4th Cir. 2006)(stating that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the

---

[6] By letter dated November 6, 2014, Plaintiff notified Warden Coakley that Defendant Turner punched him in the groin area twice during a pat search. (Document No. 18-5, pp. 15 - 19.) By letter dated November 6, 2014, Inmate Smith notified Warden Coakley that Defendant Turner made insulting and racial comments to Plaintiff and conducted an "aggressive search." (*Id.*, pp. 4 - 8.) By Affidavit dated January 12, 2015, Inmate Smith stated that Defendant Turner conducted an aggressive pat search of Plaintiff. (Document No. 27-1, p. 10.) By Affidavit signed March 17, 2015, Plaintiff stated that "Turner hit me in my groin with his flat open hand." (Document No. 18-5, p. 12.) By Affidavit signed March 24, 2015, Inmate Smith stated that he "observed Turner intentionally strike Mack twice in his groin with his fist. (*Id.*, p. 23.) In Defendant Turner's Declaration, he denies striking Plaintiff and states that he "performed a normal pat search." (Document No. 18-2.) In his Declaration, Defendant Elmore states that he "did observe Mr. Turner conduct a pat search on Plaintiff, but contrary to Plaintiff's allegations, I did not see Mr. Turner hit Plaintiff or strike him in the groin." (Document No. 18-4.)

plaintiff's testimony is correct."). The undersigned notes that violently hitting Plaintiff in the groin area during a pat search, whether with an open hand or closed fist, could constitute excessive force. During his deposition, Inmate Smith stated that Defendant Turner "went down and came up with his hand and hit [Plaintiff] between the groin as hard as he could, twice." (Document No. 66, p. 11.) An officer conducting a pat search has a legitimate reason to search the groin area and apply the amount of force that is inherently necessary for a pat search. An officer's act of hitting an inmate in the groin "as hard as he could," however, is force in excess of what is inherently necessary for a pat search. The undersigned finds that there is a genuine issue of material fact concerning the amount of force applied by Defendant Turner in conducting the pat search of Plaintiff.

**D.     No evidence of bystander liability:**

Bystander liability is established if a plaintiff demonstrates that a law-enforcement officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act." Stevenson, 743 F.3d at 417(quoting Randall, 302 F.3d at 204).

*(i)     **Defendant Stock.***

Defendant Stock argues that she is entitled to summary judgment because there is no evidence of bystander liability. (Document No. 67, pp. 13 – 14.) Specifically, Defendant Stock first contends there is no evidence that she was present during the pat search of Plaintiff. (Id.) Second, Defendant Stock contends there is no evidence that Plaintiff was subjected to excess force during the pat search. (Id.) In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as

24

executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (<u>Id.</u>) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

A thorough review of the record reveals a genuine issue of material fact as to whether Defendant Stock was present during the pat search. By letter dated November 6, 2014, Plaintiff notified Warden Coakley that Defendant Stock was "present as Counselor Turner attempted to intimidate Inmate Smith" and "coerce Inmate Smith's account of the events that had transpired." (Document No. 18-5, pp. 15 - 19.) By letter dated November 6, 2014, Inmate Smith notified Warden Coakley that Defendant Stock was present when Defendant Turner attempted to intimidate Inmate Smith concerning his account of the events that had occurred with Plaintiff. (<u>Id.</u>, pp. 4 - 8.) By Affidavit signed March 17, 2015, Plaintiff stated that "Inmate Ricky Smith stated Case Manager Stock was also present when Turner attempted to intimidate him." (Document No. 18-5, p. 13.) By Affidavit signed March 24, 2015, Inmate Smith stated that he "believe[d] Erica Stock entering the hallway stopped Turners' verbal assault on me." (<u>Id.</u>, p. 23.) By Declaration dated June 2, 2015, Defendant Stock stated as follows:

> On November 6, 2014, I was working at the SPC, but I did not see Mr. Turner interacting at all with Plaintiff. I did briefly see Mr. Turner speaking with inmate Smith near the SPC Camp Message Center, but they were not arguing, cursing, or yelling. I did not hear Mr. Turner say anything derogatory to inmate Smith or hear him trying to coerce inmate Smith into anything. If I thought anything unusual was going on, I would have stayed in the area in case Mr. Turner needed assistance. However, because nothing unusual was going on, I continued with my normal job assignments.

(Document No. 18-3, p. 2.) By Affidavit signed June 17, 2015, Plaintiff stated that when he "turned around to submit to the 'pat search,' I could see Defendant Elmore and Defendant Erica

25

Stock (who had entered the Message Center area), both in the Message Center doorway observing the violent assault by Defendant Turner and laughing as the assault took place." (Document No. 27-1, pp. 5 – 6.)

The undersigned finds that Plaintiff's foregoing testimony is not self-contradictory testimony provided in response to a motion for summary judgment. See Stevenson, 743 F.3d at 422 (noting that "[t]his Court has previously referred to bogus affidavits submitted in opposition to summary judgment for the purpose of creating disputes of material fact as 'sham' affidavits). Plaintiff's Affidavit signed June 17, 2015, specifically addresses the issue of whether Defendant Stock was present and witnessed the pat search conducted by Defendant Turner. Although Defendant Stock argues that the foregoing is self-contradictory, the undersigned notes that Plaintiff's prior statements omitted information concerning whether or not Defendant Stock was present during the pat search. Importantly, Defendant Stock's own Declaration is void of any specific statement concerning whether or not she was present for the pat search. Defendant Stock merely states that she did not observe any interaction between Plaintiff and Defendant Turner. In response to Defendants' first motion for summary judgment, Plaintiff specifically addressed the issue and states in his Affidavit that Defendant Stock was present and witnessed the pat search. Thus, the undersigned finds that there is a genuine issue of material fact concerning whether Defendant Stock was present and witnessed the pat search of Plaintiff. For the reasons stated above, the undersigned further finds there are genuine issues of material fact concerning whether Defendant Turner subjected Plaintiff to excessive force. Drawing all inferences in a light most favorable to Plaintiff, the undersigned finds a reasonable jury could return a verdict for Plaintiff based on the evidence presented. Accordingly, summary judgment on the above issue is

26

improper.

### (ii)    *Defendant Elmore.*

Defendant Elmore argues that he is entitled to summary judgment because there is no evidence of bystander liability. (Document No. 69, pp. 12 – 14.) Specifically, Defendant Elmore contends there is no evidence that Plaintiff was subjected to excessive force during the pat search. (Id.) In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

As stated above, the undersigned finds genuine issues of material fact concerning whether Plaintiff was subjected to excessive force during the pat search. Accordingly, summary judgment on the above issue is improper.

### E.    FTCA Judgment Bar:

In their Motions, Defendants Stock and Elmore argue that Plaintiff's Bivens claim is now barred by the FTCA's judgment bar rule. Although Defendants acknowledge that the District Court noted in its Memorandum Opinion and Order that Plaintiff did not intend to bring an FTCA claim, Defendants argue that "Plaintiff continued to assert a common law tort claim for intentional infliction of emotional distress (IIED)." (Id.) Defendants argue that the Court determined that "such a claim must be brought pursuant to the FTCA and dismissed the IIED claim because plaintiff failed to file an administrative tort claim and because he disavowed any

27

intention of doing so." (Id.) Defendant, therefore, contends that "Plaintiff's continued assertion of an IIED claim and its dismissal triggered the judgement bar of the FTCA." (Id.) Next, Defendants claim that "Plaintiff's Bivens claim and his IIED claim arise from the same subject matter, that is, the pat search." (Id.) Defendants, therefore, claim that Section 2676 acts as a complete bar to Plaintiff's Bivens claim. (Id.)

In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

Title 28 U.S.C. § 2676 provides that "[t]he judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."[7] 28 U.S.C. § 2676. "[B]y reason of the same subject matter" has been interrupted to mean "arising out of the same actions, transactions, or occurrences." Serra v. Pichardo, 786 F.2d 237 (6th Cir. 1986), cert. denied, 107 S.Ct. 103, 479 U.S. 826, 93 L.Ed.2d 53 (1986). The purpose of Section 2676 is to prevent dual recovery and to avoid the waste of government resources in defending repetitive suits. See Hallock v. Bonner, 387 F.3d 147, 154 (2nd Cir. 2004)(reversed on other grounds); Gasho v. United States, 39 F.3d 1420, 1437 (9th Cir. 1994).

---

[7]   **Error! Main Document Only.**In *Simmons v. Himmelreich*, ___ U.S. ___, 136 S.Ct. 1843, 195 L.Ed.2d 106 (2016), the United States Supreme Court held that dismissal for lack of subject matter jurisdiction isn't a "judgment" that triggers the FTCA's judgment bar.

Courts have consistently held that a judgment on a FTCA claim bars a <u>Bivens</u> claim even if raised in the same suit. <u>Unus v. Kane</u>, 565 F.3d 103 (4th Cir. 2009); <u>Manning v. United States</u>, 546 F.3d 430 (7th Cir. 2008); <u>Harris v. United States</u>, 422 F.3d 322 (6th Cir. 2005); <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d 840 (10th Cir. 2005); <u>Freeze v. United States</u>, 343 F.Supp.2d 477, 481 (M.D.N.C. 2004), <u>aff'd</u>, 131 Fed. Appx. 950 (4th Cir. 2005); and <u>Sanchez v. Felts</u>, Case No. 5:07-cv-0355 (S.D.W.Va. Sept. 26, 2011)(J. Johnston)("[I]f a plaintiff elects to pursue a remedy under the FTCA to judgment, he risks dismissal of any *Bivens* claim if the *Bivens* claim arises from the 'the same subject matter' and is against the same 'employee whose act or omission gave rise to the claim.' This is true whether the FTCA claim is brought before or after the *Bivens* claim, or if, as here, both claims are brought in the same suit.")

In <u>Unus</u>, the Fourth Circuit explained as follows:

> Litigants frequently face tough choices - choices that rarely come without consequence. In these proceedings, the plaintiffs chose to pursue their claims against the federal agent defendants through <u>Bivens</u> as well as under the FTCA. As such, they risked having a judgment on the FTCA claims operate to bar their <u>Bivens</u> theories. As explained above, the district court properly awarded summary judgment to the United States on the FTCA claims. Those claims arose out of the "same subject matter" as the First and Fourth Amendment <u>Bivens</u> subclaims . . .. As such, the court's summary judgment award on the FTCA claims triggers the judgment bar provision of § 2676, and the plaintiffs' First and Fourth Amendment <u>Bivens</u> subclaims against the federal agent defendants are thus barred.

<u>Unus</u>, 565 F.3d at 122; <u>also see</u> <u>Sanchez</u>, Case No. 5:07-cv-0355("[W]hile Congress permitted constitutional claims to be pursued in tandem with FTCA claims, the broad sweep of the language of § 2676 indicates that Congress also determined that once a plaintiff elects to pursue the FTCA claim to judgment, that strategic decision triggers application of § 2676 to 'any action' – including constitutional claims – against the federal employee whose conduct was at issue in

the adjudicated FTCA claim.").[8] Further, it is generally recognized that Section 2676 makes no distinction between favorable and unfavorable judgments. Unus, 565 F.3d at 121-22; Harris, 422 F.3d at 334-35; Estate of Trentadue ex rel. Aguilar, 397 F.3d at 858; Freeze, 343 F.Supp.2d 481; Hoosier Bancorp of Ind., Inc. v. Rasmussen, 90 F.3d 180, 184-85 (7th Cir. 1996). Thus, a FTCA judgment, favorable or unfavorable, prevents a plaintiff from asserting a Bivens claim "arising out of the same actions, transactions, or occurrences."

First, the undersigned must consider whether the dismissal of Plaintiff's FTCA claim constitutes a judgment for purposes of Section 2676. In response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Plaintiff stated that "he NEVER intended to make any claims listed in his Complaint pursuant to the Federal Tort Claims Act." (Document No. 27, pp. 13 - 14.) Although the undersigned addressed the FTCA issue regarding exhaustion in his PF&R, the undersigned did so for the purposes of completeness. (Document No. 32, pp. 9 – 13.) The undersigned noted that although Plaintiff argued that he did not intend to assert a FTCA claim, Plaintiff had alleged tort claims against Defendants. (Id.) To the extent

---

[8]  In *Carlson v. Green*, 446 U.S. 14, 21-23, 100 S.Ct. 1468, 1472-74, 64 L.Ed.2d 15 (1980), the Supreme Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. In *Sanchez*, however, Judge Johnston explained that plaintiff's reliance upon *Carlson* was misplaced. Specifically, Judge Johnston stated as follows:

> [W]hile § 2679 of the FTCA expressly exempts constitutional claims from the FTCA's exclusiveness of remedy rule, Congress carved out no such exception for the FTCA's judgment bar rule. These two sections read in conjunction with one another serve different interests. Section 2679 exempts constitutional claims from the rule that the FTCA is the exclusive remedy for redress of common law torts committed by federal officials acting within the scope of their office and employment. Section 2676, on the other hand, operates as a "complete bar," once an FTCA judgment is adjudicate, to "any" other action against the federal employee involving the same subject matter.

Plaintiff was asserting a FTCA claim based upon the alleged torts committed by the individual Defendants, the undersigned determined that Plaintiff had failed to exhaust his administrative remedies. (Id.) In his Objections, Plaintiff again clarified that he did not intend to bring a FTCA claim. (Document No. 38.) By Memorandum Opinion and Order entered on March 14, 2016, Judge Berger noted Plaintiff's objection that he did not intend to bring a FTCA claim and determined "there is no need for *de novo* review by this Court, and no FTCA claims may go forward." (Document No. 40, p. 8.) Based on the foregoing, the undersigned finds that Judge Berger's Memorandum Opinion and Order entered on March 14, 2016 did not constitute a judgment on Plaintiff's FTCA claim for purpose of Section 2676. Plaintiff is acting *pro se*, and the documents which he files in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore are construed liberally. "Liberal construction does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, * 3 (N.D.W.Va. 2007)(citing Gordon, 574 F.2d at 1151.) Based upon the liberal construction standard, the undersigned addressed Plaintiff's claims under the FTCA. Plaintiff, however, objected to his claims being construed under the FTCA. Although Plaintiff is acting *pro se*, Plaintiff is entitled to control which claims he wishes to assert and under what cause of action he wishes to pursue such claims. Judge Berger's Memorandum Opinion noted Plaintiff's continued objection to his claim being construed as a claim under the FTCA and determined that "no FTCA claims may go forward." (Document No. 40.) Based on the foregoing, the undersigned finds that there has been no judgment on a FTCA claim for purposes of Section 2676.

F.    **Failure to Disclose:**

Defendants Stock and Elmore argue that "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose." (Document No. 67, pp. 16 – 17 and Document No. 69, p. 15.) Defendants explained that the Court's Scheduling Order required Plaintiff to make his Rule 26(a)(1) disclosures by August 15, 2016. (<u>Id.</u>) Defendants contend that Plaintiff has not made his disclosures and Defendants object to any disclosures out of time. (<u>Id.</u>) Defendants, therefore, assert that Plaintiff's failure to make his disclosures "prohibit him opposing this motion or presenting witnesses, documents, or damages at trial." (<u>Id.</u>)

In Response, Plaintiff states as follows:

Apart from the defendants' contention that "the Plaintiff is prohibited from introducing evidence due to his failure to disclose," the remaining issues raised in the defendants' "Motion for Summary Judgment" have already been addressed by the Court's Memorandum Opinion and Order dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia. Accordingly, the Plaintiff will address the only issue not ruled on by the Court as of this date.

(Document No. 85.) Although Plaintiff states that he intends the address the "failure to disclose issue," Plaintiff's Response is void of any arguments on the issue. (<u>Id.</u>) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

Rule 26(a)(1) of the Federal Rules of Civil Procedure provides that "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information;" (ii) a copy or description of all documents that the disclosing party has in his possession that may be used to support his claim or defense; (iii) "a computation of each category of damages claimed

32

by the disclosing party;" and (iv) a copy of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment.[9] Fed. R. Civ. P. 26(a)(1). Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) further provides that "[i]n additional to *or instead of this sanction*, the court, on motion and after giving an opportunity to be heard: (a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (b) may inform the jury of the party's failure; and (c) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Id.(emphasis added) The basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to the opposing party. Southern States Rack & Fixture, Inc. v. Sherwin Williams, Co., 318 F.3d 592, 596 (4th Cir. 2003). A district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. Id. at 597. The Fourth Circuit has established the following five factor test to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) analysis: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclosure the evidence." Id.

---

[9] Rule 26(a)(1)(B) provides that "an action brought without an attorney by a person in the custody of the United States" is a proceeding exempt from initial disclosure. Fed. R. Civ. P. 26(a)(1)(B). The undersigned, however, notes that by Scheduling Order entered on April 11, 2016, Judge Berger directed that "[a]ll discovery, including disclosures required by Fed. R. Civ. P. 26(a)(1) and (2), but not disclsoures required by Fed. R. Civ. P. 26(a)(3), shall be completed by August 15, 2016." (Document No. 50.)

In their instant Motion for Summary Judgment, Defendants argue that Plaintiff's claim must be dismissed because "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose." The preclusion of evidence is a sanction set forth in Rule 37(c)(1). A review of the record, however, reveals that Defendants have not filed a motion to compel or motion for sanctions in the instant case.[10] Thus, there is been no determination as to whether Plaintiff's nondisclosure of evidence was substantially justified or harmless for purposes of the Rule 37(c)(1) analysis. Defendants fail to assert any arguments concerning their surprise as to any potentially undisclosed evidence, the Plaintiff's ability to cure the surprise, the extent to which allowing the undisclosed evidence would disrupt the trial, and the importance of any undisclosed evidence. The undersigned further notes that Plaintiff is proceeding *pro se* and is entitled to some deference from the Court. Haines, 404 U.S. at 521, 92 S.Ct. at 596; Bauer v. Commissioner, 97 F.3d 45, 49 (4th Cir. 1996)(courts will liberally treat errors made by *pro se* litigants, especially when procedural rules are involved). Given the Court's broad discretion in imposing sanctions, the undersigned notes that the preclusion of evidence and dismissal of Plaintiff's claims would be a very severe sanction to impose upon a *pro se* Plaintiff. See Southern States, 318 F.3d at 595 (Particularly wide latitude is given to the district court's discretion to issue sanctions under Rule 37(c)(1)). Based upon the foregoing, the undersigned finds that the record contains insufficient information for the Court to make determination as to whether Plaintiff's nondisclosure of evidence was substantially justified or harmless.

---

[10]   Defendants appear to argue that Plaintiff failed to make any initial disclosures under Rule 26(a)(1). If Plaintiff failed to make his initial disclosures, the appropriate course of action was for Defendants to file a motion to compel. Defendants, however, waited until the initial disclosure deadline expired and sought dismissal of Plaintiff's case based upon his nondisclosure.

Accordingly, the undersigned respectfully recommends that Defendants' Motions for Summary Judgment be denied.

**2.    Defendant Turner's Motion for Summary Judgment:**

      **A.    Qualified Immunity:**

Similar to Defendants Stock and Elmore, Defendant Turner argues that he is entitled to qualified immunity because "the status of the Eighth Amendment for pat searches was not clearly established on November 6, 201[4]." (Document No. 71, pp. 8 – 9.) For the reasons stated above in Section 1(B), the undersigned finds that the above argument is without merit.

      **B.    No evidence of excessive force:**

Defendant Turner argues that he is entitled to qualified immunity because Plaintiff cannot establish a constitutional violation (Document No. 71, pp. 2 – 8.) Specifically, Defendant Turner argues that there is insufficient evidence to establish a claim of excessive force. (Id.) First, Defendant Turner argues that "the plaintiff's subjective evidence from eyewitness Ricky Smith support a finding that there was no constitutional violation." (Id., p. 5.) Defendant Turner states that "Inmate Smith acknowledged that pat searches include open-hand physical contact starting with the arms, moving to the shoulders, torso, the legs and include the groin because 'that's the way you mostly hide things.'" (Id.) Defendant Turner further claims that during his deposition, Inmate Smith described the pat search as aggressive and indicated that he perceived the intent of the pat search was to entice Plaintiff to fight. (Id.) Defendant Turner asserts that "[w]anting to pick a fight is not the constitutional equivalent of maliciously and sadistically wanting to cause harm." (Id.) Defendant Turner further states that "plaintiff's evidence supports the reasonable need to conduct a pat search" because Plaintiff and Inmate Smith returned to the message center

to discuss Defendant Turner's "black bitch" comment. (Id.) Defendant Turner concludes that none of the subjective component of an Eighth Amendment violation can be established because "[t]aking plaintiff's facts as true, the pat search was reasonably conducted to maintain safety and Mr. Turner's intent was not sadistic or malicious to cause harm." (Id.)

Next, Defendant Turner argues that Plaintiff's objective component evidence does not support a constitutional violation. (Id., pp. 7 – 8.) Defendant Turner notes that Plaintiff argued to the Court that Turner "encountered a heavily muscled inmate who was fully capable of withstanding the bellows administered" and Plaintiff "only winced in pain." (Id.) Defendant Turner notes that Plaintiff refused to allow a healthcare provider to exam his groin area. (Id.) Defendant Turner argues that his "action, at best, are more akin to 'a push or shove' that causes no discernable injury [and] almost certainly fails to state a valid excessive force claim." (Id.) Defendant Turner, therefore, concludes that "Plaintiff's proof is insufficient to support a constitutional claim of excessive force. (Id.)

In Response, Plaintiff argues that the above issue has "already been addressed by the Court's Memorandum Opinion and Order" dated March 14, 2016, as executed by the Honorable Irene C. Berger, United States District Judge, for the Southern District of West Virginia." (Document No. 85.) Accordingly, Plaintiff finds it unnecessary to address the above issue. (Id.) In Reply, Defendants state "that they do not wish to reply to plaintiff's Response other than to acknowledged that it is untimely." (Document No. 89.)

In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. at

36

1085(citations omitted); <u>also see</u> <u>Wilkins</u>, 559 U.S. at 34, 130 S.Ct. at 1175. To establish a violation of the Eighth Amendment in the context of a challenge to prison officials' use of force, an inmate must allege (1) that the prison officials acted with a "sufficiently culpable state of mind" under a subjective standard and (2) a "sufficiently serious" injury under an objective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-25, 115 L.Ed.2d 271 (1991); <u>also see</u> <u>Iko v. Shreve</u>, 535 F.3d 225, 238 (4th Cir. 2008).

To establish the subjective component, an inmate must demonstrate that prison officials applied force "maliciously and sadistically for the very purpose of causing harm." <u>Whitley</u>, 475 U.S. at 320-21, 106 S.Ct. at 1085. In determining whether prison officials acted maliciously and sadistically, the following factors must be balanced: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." <u>Iko</u>, 535 F.3d at 239(citing <u>Whitley</u>, 475 U.S. at 321, 106 S.Ct. at 1078). Additionally, the absence of serious injury is relevant to the determination of prison officials' culpable intent, but is not dispositive. <u>Id.</u> Although every "malevolent touch" by a prison guard will not give rise to a federal cause of action, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>See</u> <u>Wilkins</u>, 559 U.S. at 38, 130 S.Ct. at 1179; <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

Concerning the objective component, the focus is "not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" <u>Wilkins</u>, 559 U.S. at 40, 130 S.Ct. at 1179("The 'core judicial inquiry' . . . [is] not whether a certain quantum of

injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"); also see Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)("[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry.") The "absence of serious injury," however, is not irrelevant to the inquiry. Id., 559 U.S. at 37, 130 S.Ct. at 1178(citing Hudson, 503 U.S. at 9, 112 S.Ct. at 995). The extent of an inmate's injury may (1) "suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," and (2) "provide some indication of the amount of force applied." Id.(citations omitted). 'The Eighth Amendment's prohibition . . . necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of the sort repugnant to the conscience of mankind." Harris v. Salley, 339 Fed.Appx. 281, 284 (4th Cir. 2009), citing Hudson, 503 U.S. at 9 - 10, 112 S.Ct. at 1000. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 38, 130 S.Ct. at 1178(citations omitted). The objective component standard, however, is significantly less demanding than required in the context of challenges to conditions of confinement because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9, 112 S.Ct. at 1000 ("This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.") Thus, the objective component is "responsive to contemporary standards of decency." Id.

Regarding the first Whitely factor, the undersigned finds that there are genuine issues of material facts as to the need for the application of force. Viewing the facts in a light most

favorable to Plaintiff, a jury could reasonably find that there was no need for the application of force. Plaintiff contends that Defendant Hudson violently struck or punched him in the groin area during a pat search.[11] In Defendant Turner's Declaration, he denies striking Plaintiff and states that he "performed a normal pat search." (Document No. 18-2.) In Defendant Elmore's Declaration, he states that he "did observe Mr. Turner conduct a pat search on Plaintiff, but contrary to Plaintiff's allegations, I did not see Mr. Turner hit Plaintiff or strike him in the groin." (Document No. 18-4.) Although Plaintiff cannot create an issue of fact by providing self-contradictory statements, the undersigned finds that there is a genuine issue of material fact concerning whether force was applied during the pat search. Plaintiff and Inmate Smith contend that Defendant Turner forcefully struck Plaintiff in the groin during the pat search, while Defendant Turner contends that he used only the amount of force inherently necessary to conduct a pat search. Furthermore, Plaintiff presents evidence that Defendant Turner used derogatory language towards Plaintiff when he was conducting the pat search. See Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008)(comments or actions by a defendant that indicate a

---

[11]  The record reveals that both Plaintiff and Inmate Smith changed their statements regarding whether Defendant Turner conducted an aggressive pat search using his open hand or intentionally punched Plaintiff in the groin area with his fist. By letter dated November 6, 2014, Plaintiff notified Warden Coakley that Defendant Turner punched him in the groin area twice during a pat search. (Document No. 18-5, pp. 15 - 19.) By letter dated November 6, 2014, Inmate Smith notified Warden Coakley that Defendant Turner made insulting and racial comments to Plaintiff and conducted an "aggressive search." (*Id.*, pp. 4 - 8.) By Affidavit dated January 12, 2015, Inmate Smith stated that Defendant Turner conducted an aggressive pat search of Plaintiff. (Document No. 27-1, p. 10.) By Affidavit signed March 17, 2015, Plaintiff stated that "Turner hit me in my groin with his flat open hand." (Document No. 18-5, p. 12.) By Affidavit signed March 24, 2015, Inmate Smith stated that he "observed Turner intentionally strike Mack twice in his groin with his fist. (*Id.*, p. 23.) During his deposition, Inmate Smith stated that when Defendant Turner conducted the pat search of Plaintiff, Defendant Turner "hit him between the groin as hard as he could, twice." (Document No. 70, pp. 10 - 11.)

malicious motive are relevant to the subjective inquiry in an Eighth Amendment claim), abrogated on other grounds, Estate of Armstrong v. Village of Pinehurst, 810 F.3d 892 (4th Cir. 2016). Although Defendant Turner contends that Plaintiff was agitated during the pat search, Defendant Turner does not contend that Plaintiff attempted to resist in any way. Accordingly, there is an issue of fact as to whether the amount of force used by Defendant Turner was necessary to conduct a pat search on a non-resistant inmate. See Clark, 2008 WL 2356739, at * 3 – 4(denying summary judgment where plaintiff testified that after he submitted to handcuffing, the detention officer, "while smiling, drop his right knee directly into [the plaintiff's] groin," because "viewing the evidence in the light most favorable to [the plaintiff], there was no need for any further force by [the defendant], and thus the subsequent alleged kick to the groin was indeed wanton and without justification.")

Considering the second Whitely factor, the undersigned finds that there are genuine issues of material facts as to the relationship between the need for the application of force and the amount of force used. Since the undersigned has found issues of fact concerning whether there was a need for the application of force, the Court also finds issues of facts as to whether the amount of force was unnecessary. Tedder v. Johnson, 527 Fed.Appx. 269, 273 (4th Cir. 2013)(Since the facts "permit the conclusion that no force was necessary at all, the *Whitley* 'amount of force' factor favors [plaintiff] as well.") Although Defendant Turner contends he applied only the amount of force necessary to conduct a pat search, Plaintiff and Inmate Smith contend that Plaintiff was forcefully hit in the groin area. It is well established that it is a violation of the Eighth Amendment for prison officials to apply unnecessary force for the sole purpose of inflicting pain. See Iko, 535 F.3d at 240(citations omitted)(it is a violation of the

Eighth Amendment for prison officials to use chemical agents "in quantities great than necessary or for the sole purpose of infliction of pain.") Based upon the foregoing, the undersigned finds there are genuine issues of material facts as to the relationship between the need for the application of force and the amount of force used by Defendant Turner. Due to the foregoing issues of fact, the undersigned finds it unnecessary to consider the remaining <u>Whitely</u> factors.

Next, the undersigned will consider the objective component. Defendant Turner argues that Plaintiff did not suffer any serious injury from the alleged force used during the pat search. The focus, however, is "not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" <u>Wilkins</u>, 559 U.S. at 40, 130 S.Ct. at 1179. Again, the undersigned finds there are genuine issues of material fact concerning the "nature of the force" applied by Defendant Turner. To the extent Defendant Turner argues that Plaintiff suffered no serious injury, such is not dispositive. The extent of an inmate's injury may be considered to "provide some indication of the amount of force applied." Defendant Turner notes that Plaintiff alleged that the amount of force used caused Plaintiff to "wince in pain." In his verified Complaint, Plaintiff states that Defendant Turner's act of striking Plaintiff in the groin area caused him to suffer "severe pain and discomfort" and "soreness and bruising to his groin, arms, and legs," and "intermittent pain in his groin area for the four months [following] the assault." (Document No. 1, pp. 4, 6 - 7.); <u>See</u> <u>Williams</u>, 77 F.3d at 762(The objective component of an excessive force claim "can be met by the pain itself, even if an inmate has no enduring injury.") The foregoing constitutes adequate evidence of a non-trivial application of force. <u>Wilbanks v. Simmons</u>, 2014 WL 3894359, * 7 (M.D.N.C. Aug. 8, 2014)("A proper averment by Plaintiff that Defendant's blow caused Plaintiff 'to double over in pain' and required Plaintiff to seeks

'medical [attention] for the pain & swelling in [his] testicles, would constitute adequate evidence of a non-trivial application of force"); Kilmartin v. Schaffer, 2013 WL 5929447, * 5 (N.D.N.Y. Nov. 1, 2013)("Being kicked in the groin without provocation is not, as a matter of law, a *de minimis* force for purposes of a Fourth Amendment excessive force claim."); Clark v. Compton, 2008 WL 2356739, * 2 – 3 (N.D.Ind. June 4, 2008)(finding plaintiff's claim that he suffered swelling, pain, and some discomfort from a knee strike to his groin by a correctional officer was not *de minimis* for the purpose of the Eighth Amendment). Furthermore, the undersigned notes that the required amount of force necessary to conduct a proper pat search should not cause an individual to experience severe pain or to "wince in pain." Striking or punching a male in the groin area during a non-resistant pat search clearly evidences the malicious and sadistic use of force for the sole purpose of causing harm. When a prison official maliciously and sadistically uses force to cause harm, the use of force is of the sort repugnant to the conscience of mankind and the "contemporary standards of decency are always violated." Harris, 339 Fed.Appx. at 284(citing Hudson, 503 U.S. at 9 - 10, 112 S.Ct. at 1000.) Based upon the foregoing, the undersigned finds that there is a genuine issue of material fact as to whether the nature of force applied by Defendant Turner was nontrivial and correspondingly satisfies the objective inquiry. Accordingly, the undersigned finds that Defendant Turner is not entitled to summary judgment upon the above issue.

### B.     Judgment Bar:

Similar to Defendants Stock and Elmore, Defendant Turner argues that the judgment bar forecloses Plaintiff's Bivens claim. (Document No. 71, pp. 10 – 11.) The undersigned addressed this issue in Section 1(E) above. For the reasons set forth above in Section 1(E), the undersigned

finds that Plaintiff's <u>Bivens</u> claim is not precluded by the FTCA judgment rule.

**C.     Failure to Disclose:**

Similar to Defendants Stock and Elmore, Defendant Turner argues that "Plaintiff is prohibited from introducing evidence of damages due to his failure to disclose." (Document No. 71, p. 12.) The undersigned addressed this issue in Section 1(F) above. For the reasons stated above in Section 1(F), the undersigned finds that the above argument is without merit.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Defendant Stock's Motion for Summary Judgment (Document No. 66), **DENY** Defendant Elmore's Motion for Summary Judgment (Document No. 68), and **DENY** Defendant Turner's Motion for Summary Judgment (Document No. 70).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 13, 2016.

Omar J. Aboulhosn
United States Magistrate Judge